## WRIGHT TERRY v. THE STATE.

### No. 2814. Decided November 11, 1903.

**1.—Change of Venue—Several Defendants—Practice.**

An order changing the venue where several defendants are jointly indicted is not invalidated by the failure to embrace one of said defendants in said order for change of venue, especially where such defendant had never been arrested.

**2.—Severance of Joint Defendants—Practice.**

There were two homicides growing out of the same transaction and two indictments, in one of which defendant and one M. were jointly charged with the murder of G., and in the other with the murder of E. Defendant's motion for a severance was granted in the first case for the murder of G., and M., his codefendant, was placed upon trial and acquitted. Held, it was error to refuse a motion for a similar severance in the second case for the murder of E.

**3.—Murder—Evidence—Extraneous Crimes—Motive—Res Adjudicata.**

On a trial for murder, evidence of extraneous crimes illustrating motive, intent and identity of defendant is admissible, especially where such acts are shortly antecedent to the murder and serve strongly to illustrate the cruelty and wanton motive of defendant and those acting with him, and are so interwoven and connected with the killing for which defendant was being tried as that they became part and parcel thereof and res gestae of the transaction.

**4.—Same—Motive—Charge of Court—Weight of Evidence.**

A charge upon motive, predicated upon extraneous crimes, on a trial for murder, is not necessary unless the proof has been introduced on a controverted question of intent; and when so admitted the court should limit the evidence to that purpose in its charge. Such a charge is upon the weight of evidence, which instructed the jury, in effect, that such evidence was to be considered by them together with the other testimony, and to be given such weight as, upon consideration of the entire testimony, they might deem the same entitled to in determining defendant's motive, and for no other purpose; and that such testimony could not be considered as affecting defendant's right of self-defense.

**5.—Same—Charge—Apparent Danger—Self-Defense.**

A charge upon self-defense based upon apparent danger is necessary where deceased made an attack upon defendant, or defendant believed he was about to make an attack upon him threatening his life or serious bodily injury.

**6.—Same—Manslaughter.**

On a trial for murder, a charge upon manslaughter is not required where there is no evidence presenting that issue.

Appeal from the District Court of Walker, on a change of venue from Trinity County. Tried below before Hon. J. M. Smither.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant and Howard Magee and Otho Oldacre jointly with the murder of J. M. Gary, in Trinity County, on the 17th day of July, 1902, by shooting him with a gun. The killing occurred in the town of Groveton, and after midnight. Gary, the deceased, was a practicing physician, and at the time he was killed was in company with one L. B. Eagle, who had gone for him to come and attend a man who had been shot at the Sylvan Hotel. Eagle was also killed at the same time and place as was Dr. Gary.

By a separate indictment these same parties, appellant, Magee and Oldacre, had also been jointly indicted in Trinity County for the murder of Eagle. A severance was had in the case for the murder of Gary, and Howard Magee had been separately tried and acquitted of that murder. When this case was called for trial against Wright Terry, this defendant, he made another motion for severance from his codefendant Howard Magee, in the case for the murder of Eagle, so that defendant might have the benefit of his, Magee's, testimony in the case untrammeled by his being under indictment in said latter case. This motion was overruled.

Late on the night of the killing Wright Terry and Howard Magee and Otho Oldacre were together. They borrowed a Winchester and a double-barreled shotgun and procured ammunition and loaded the guns and started out, for what purpose the record does not disclose. Shortly afterwards they were seen in the rear of the Sylvan Hotel. Here, it seems, they got into a wordy altercation with Eagle, who was a guest, and who hollooed to them from the inside of the hotel. They cursed him and commenced firing into the hotel. They fired a number of shots into the house and wounded a guest in the house by the name of Williams. Eagle went for Dr. Gary to come and see the wounded man Williams, but returned without the doctor. Partlow, another guest, then went for the doctor and found him. In the meantime Eagle again started out for the doctor. In going from the hotel to the doctor's office, the nearest way was through an alley in the rear of the Sylvan Hotel. The defendant and his comrade were in this alley. When Eagle came up to where they were, in answer to their questions as to where he was going, he told them he was going after a doctor to see the wounded man. About this time, Dr. Gary approached from the other direction on his way to the hotel. Defendant testified that he became alarmed at the actions and movements of the parties—thought they were going to disarm and shoot him—and that he fired first at Eagle and then at Dr. Gary, killing them both.

Defendant's testimony that he asked Eagle where he was going, and he replied that he was going for a doctor. "I told him to go get one; that I was no doctor. He got up pretty close to me and tried to get hold of my gun, and Howard and Oldacre went down the alley. He tried to get up close to me and tried to get hold of my gun, and Howard and Oldacre went down the alley. He tried to get up close to me and I told him to go on and let me alone. I told him to go on and get a doctor, and he turned one way and I turned the other down the alley. When we turned we turned our backs together, and I thought he was gone. He turned back on me and I heard the footsteps. I looked around and he was right on me, and I brought my gun down and shoved him off. I gave him a good shove and he went some ways into the main street. I raised my gun and told him to leave. He started towards the corner of the millinery store, and I went down the side of the market. Then he turned down the side of the millinery store and was about two feet behind me. I was on one side of the alley and he was on the other. I got down by the willow tree and stopped. He went on about fifteen or twenty feet through the alley in the direction of the Sylvan Hotel. He stopped and looked around, and I asked him where he was going; he said he was going for a doctor for a man who was shot in the Sylvan Hotel. He got closer to me, and I told him I did not know anything about him and did not want to hurt him, but to let me alone and let my gun alone. About this time I heard another man coming up and heard him coming up behind me. I backed out north up toward the printing office. When this other man got up to me I asked him who it was and he said nothing, and Eagle says, 'That is Dr. Gary,' and Dr. Gary says, 'He knows who it is.' Then about that time when I asked who it was the other boys ran, Otho behind the fence and Magee across the alley behind a willow tree. This last man, Gary, was going in the direction of the Sylvan Hotel when I first saw him. This other man, Eagle, was on my right and Gary on my left. I thought they wanted to do something to me and I had no way to run. Gary came and I told him to stop; he raised his hands. Gary turned out of the path and started towards me, and the other man came on from the other side. I thought they were going to kill me, so I shot Gary first, then turned and shot Eagle. He was coming on me when I shot him. I did not know him, had never seen him before. I did not have any bad feeling towards Gary."

The State made an effort to show that defendant shot Gary because the doctor was a witness against him in a case pending against him for the murder of one Less Washburne. This is a brief but sufficient statement of the essential facts in the case. The other matters discussed will be fully understood from the opinion.

*Stevenson & Stevenson, Kenley & Stevenson, McKinney & Hill,* and *John C. Williams,* for appellant, filed an elaborate printed brief of 64 pages. The following are some of the propositions they insisted upon:

Where several parties are jointly indicted, and there has been no severance by the defendants, the court is without authority to change the venue as to one before the arrest of the others, and in such a case the court to which the venue is changed acquires no jurisdiction of the case.

The right to sever belongs exclusively to the defendants in a criminal case, and the court has no power to order a severance by direct order, nor indirectly do so, by change of venue as to one or more of the defendants, and not as to others, and where same is done the court to which said change is made has no jurisdiction to try said cause.

The court erred in overruling defendant's motion to put Howard Magee on trial in cause No. 6309, for the murder of Mr. Eagle, before requiring defendant to go to trial in this case, because this defendant had a right to the testimony of Howard Magee, untrammeled by fear on the part of Howard Magee of incriminating himself, and under such circumstances as would be credited by the jury.

The court erred in permitting the witness Ky Wilburn to testify, over defendant's objection, as to the procurement of arms by the defendant, because said evidence was not connected with, nor did it tend to connect, the defendant with the killing of Dr. Gary, and was irrelevant and immaterial and calculated to prejudice, and did prejudice, the minds of the jury against the defendant.

The court erred in permitting the witness Earnest Mangum to testify, over defendant's objections, as to the purchasing of ammunition by defendant, because said evidence was not connected with, nor did it tend to connect the defendant with the killing of Dr. Gary, and was irrelevant and immaterial and calculated to prejudice, and did prejudice, the minds of the jury against the defendant. And because said evidence in no way tended to show an intent on the part of the defendant to kill Dr. Gary, nor was it a part of the res gestae, nor did it tend in any way to identify the defendant with the killing of Dr. J. M. Gary.

The court erred in permitting the witness Lige Pruitt to testify, over defendant's objection, as to the procurement of arms by the defendant, because the same was not connected, and did not tend to connect the defendant with the killing of Dr. Gary, and was irrelevant and immaterial, and calculated to prejudice the minds of the jury against the defendant.

The court erred in permitting the witness C. A. Dean to testify, over defendant's objection, as to the shootings into the Sylvan Hotel and other acts prior to the killing of deceased, because same were not connected with and did not tend to connect the defendant with the killing of Dr. Gary, and were irrelevant and immaterial and calculated to prejudice, and did prejudice, the minds of the jury against the defendant, and because the same in no way tended to show intent on part of defendant to kill deceased, nor was it a part of the res gestae, nor did it in any way tend to identify the defendant with the killing of deceased.

The court erred in permitting the witness J. G. Williams to testify, over defendant's objections, as to the shooting into the Sylvan Hotel and as to other acts prior to the killing, because same were not connected with and did not tend to connect the defendant with the killing of deceased, and were irrelevant and immaterial and calculated to prejudice, and did prejudice, the minds of the jury against the defendant, and because the same in no way tended to show intent on the part of the defendant to kill deceased, nor was same a part of the res gestae, nor did it tend in any way to identify the defendant as the person who killed deceased.

The court erred in permitting the witness A. L. Farmer to testify, over defendant's objections, as to the matters and things set out in bill of exception number 8, because same are irrelevant and immaterial and did not in any way tend to connect the defendant with the killing of deceased, and was calculated to prejudice, and did prejudice, the minds of the jury against defendant, and because the same in no way tended to show an intent on the part of defendant to kill deceased, nor was the same a part of the res gestae, nor did it tend in any way to identify the defendant as the person who killed deceased.

The court erred in forcing the defendant to testify, over his objections, that on the night of the alleged killing of Dr. Gary he, the said Terry, came to town without a gun, etc.; that he got a gun from Wilburn and another from Pruitt, and ammunition from Mangum, and went to a little barn and fired into the Sylvan Hotel six or eight times, and that Howard Magee fired some shots into said hotel, etc., because said testimony was of an extraneous crime and in no way showed intent on the part of defendant to kill Dr. Gary; nor was it a part of the res gestae; nor did it serve to identify the defendant with the killing of Dr. Gary; and said testimony was irrelevant and incompetent, and tended to and did incriminate the defendant in another and different offense and worked great prjudice to defendant's cause, and said testimony did not in the remotest degree tend to show an intent or malice on the part of this defendant for killing said Gary.

Evidence of collateral facts, and those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should not be admitted. Evidence of a different and substantive crime not tending to show intent on the part of the defendant to commit the crime for which he is on trial, and not a part of the res gestae, nor tending to identify the defendant with the crime for which he is on trial, is not admissible. McAnnally v. State, 7 Texas Ct. Rep., 328; Walker v. State, 7 Texas Ct. Rep., 394; Hill v. State, 7 Texas Ct. Rep., 390; Denton v. State, 1 Texas Ct. Rep., 569; Chumly v. State, 20 Texas Crim. App., 547; Cross v. State, 30 Texas Crim. App., 480; James v. State, 49 S. W. Rep., 401; Long v. State, 47 S. W. Rep., 363; Williams v. State, 41 S. W. Rep., 647.

The court erred in that paragraph of its charge wherein it charged the

jury as follows: "You are instructed that the testimony admitted before you regarding the procurement of arms by the defendant and other parties, the occurrence at the Sylvan Hotel before the procurement of arms, and the occurrence at the Sylvan Hotel after the procurement of arms, is admitted before you to be considered by you, together with the other testimony, and to be given such weight as, upon a consideration of the entire testimony, you may deem the same entitled to, as a circumstance in determining whether or not the defendant had a, motive at said time and place in killing J. M. Gary, the deceased, and for no other purpose whatever, and under no circumstances will said testimony be considered by you as affecting defendant's right of self-defense, if you shall believe said defendant was acting in self-defense in the killing of said J. M. Gary, at the time and place of said killing." Because said charge is contrary to the law, and to the facts adduced upon the trial of said cause, is inapplicable thereto, and confused the minds of the jurors, to this defendant's great prejudice.

Evidence, to be admissible as proof of motive, must fairly tend to raise an inference in favor of the existence of a motive on the part of defendant to commit the crime for which he is on trial. Whart. on Homicide, secs. 701, 598; Greenl. on Ev., sec. 53; Bish. Crim. Proc., secs. 1065, 1067; McKinney v. State, 8 Texas Crim. App., 626-639.

A charge that assumes certain testimony to be evidence of "motive" is upon the weight of evidence. Walker v. State, 7 Texas Ct. Rep., 395.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life. Appellant, Howard Magee and Otho Oldacre were jointly indicted in Trinity County for the murder of Dr. J. M. Gary. Otho Oldacre was not arrested. The venue was changed to the District Court of Walker by the court of its own motion, because appellant was related to numerous prominent and influential citizens in Trinity County, and this would preclude the State securing a fair trial.

Appellant filed a motion to dismiss the case in Walker County because the venue was changed, and the District Court of Walker County had no jurisdiction to try it. In his motion he alleges that the indictment charged that said offense was committed by Wright Terry, Howard Magee and Otho Oldacre; that said cause was entitled by the indictment, "State of Texas v. Wright Terry, Howard Magee and Otho Oldacre, defendants," and was numbered 1981 on the docket of the District Court of Trinity County; that there is nothing to show that these defendants, Wright Terry and Howard Magee, or either of them, severed from Otho Oldacre, or that any disposition was ever made of said case pending against said Oldacre, or that such a case as the one at bar ever existed in Trinity County, or was ever transferred to Walker County from Trinity County.

The district attorney controverted appellant's motion to dismiss, alleging that the indictment is one and the same as that found in Trinity County, and that Otho Oldacre has never been arrested. This last statement is sworn to by the sheriff of Trinity County. It seems that appellant's motion is predicated solely upon the contention that the case was not transferred so far as Otho Oldacre was concerned. There is no insistence to the effect that it is not one and the same indictment as that found by the grand jury of Trinity County. The judgment of the court changing the venue from Trinity to Walker County shows that Wright Terry and Howard Magee were then in custody. The court did not err in refusing to sustain the motion to dismiss the indictment. It appears that it had been properly transferred to Walker County. The mere fact that there was no transfer so far as Otho Oldacre was concerned, would not vitiate the order changing the venue. In Stevens v. State, 42 Texas Crim. Rep., 168, we held that the failure to transfer the case, so far as a part of the codefendants were concerned, would not invalidate the transfer as to the others. It appears by the first bill of exceptions that all the papers relating to the case of the State of Texas v. Wright Terry and Howard Magee were duly transferred to the District Court of Walker County, and are the identical indictment and other papers on file herein.

Appellant made a motion for severance, and asked the court to place Howard Magee on trial first. The motion is embodied in a bill of exceptions, and is substantially as follows: Appellant asked that Howard Magee be placed on trial in cause No. 6309, then pending, and that this defendant be not compelled to go to trial before the trial of said cause No. 6309. The court overruled the motion. Attached to the bill is the following explanation: "That Howard Magee had been tried in cause No. 6308, in which defendant Wright Terry was tried, charged with the murder of J. M. Gary, and that said Magee had been acquitted of said offense on a former day of said term, and was then in custody of the sheriff of this county and in the jail of this county charged jointly with defendant with the murder of L. B. Eagle, in said cause No. 6309, and that defendant or his counsel made no application or request to have said Magee brought into court to testify in behalf of defendant in this cause (No. 6309), which request, if it had been made, would have been granted by the court and said Magee would have been allowed to testify in behalf of defendant in said cause. Further, on call of cause No. 6308, State of Texas v. Wright Terry et al., defendant Terry presented his motion for a severance in said case, and asked that Magee be put to trial first, in order that he might have the benefit of Magee's testimony in his behalf on his trial of said cause, which motion was sustained by the court and Magee tried and acquitted in said cause No. 6308." It appears that Magee and appellant were jointly indicted for the killing of Gary, and also jointly indicted for the killing of Eagle. Magee, upon proper motion by appellant, was first tried and acquitted for the killing of Gary. Now appellant makes a motion to have Magee

also tried for the killing of Eagle, before he (appellant) should be tried at all.

The court erred in refusing this motion. Article 706 of the Code of Criminal Procedure, provides: "When two or more defendants are jointly prosecuted they may sever in the trial upon the request of either." Article 707 of the Code of Criminal Procedure reads: "Where two or more defendants are prosecuted for an offense growing out of the same transaction, by separate indictments, either defendant may file his affidavit in writing that one or more parties are indicted for an offense growing out of the same transaction for which he is indicted, and that the evidence of such party or parties is material for the defense of the affiant, and that the affiant verily believes that there is not sufficient evidence against the party or parties," etc. As we understand the bill of exceptions Magee and appellant were indicted for one and the same transaction; for though two different killings still it is one and the same transaction. The court should have granted the motion for severance, and placed Magee upon trial for the killing of Eagle, prior to the calling of appellant's case.

Appellant also complains that the court erred in permitting the witness Guy Wilbourn to testify about appellant procuring arms prior to the difficulty, and also that the court erred in permitting witness Earnest Mangum to testify to the purchase of ammunition. Also that the court erred in permitting witness Lige Pruitt to testify to appellant procuring arms. And also permitting witness C. A. Dean to testify that appellant shot into the Sylvan Hotel, and that he was seen immediately back of said hotel. He further complains that the court erred in permitting the witness G. W. Williams to testify about appellant shooting into the hotel. He also objects to the court forcing appellant to testify that on the night of the alleged killing of Dr. Gary he came to town without a gun; that he procured a gun from Wilbourn, and another from Pruitt, and ammunition from Mangum, and went to a little barn and fired into the Sylvan Hotel six or eight times, and that Howard Magee fired some shots into said hotel. All of this testimony appellant insists is not admissible on the ground that it is proof of extraneous crimes, in no way showing an intent on the part of appellant to kill Dr. Gary; nor was it a part of the res gestae; nor did it serve to identify defendant with the killing of Dr. Gary. We think this testimony was admissible. It appears that appellant Magee and Otho Oldacre were together some time near 12 o'clock at night, and after securing a shotgun and Winchesters, and buying ammunition, were seen immediately back of the Sylvan Hotel, where they had some heated words with deceased Eagle. A short while afterwards they fired their guns into the hotel, wounding an inmate thereof. Immediately thereafter Eagle left the hotel, and went a short distance for a physician. Appellant and his companions were sitting near the hotel in the dark. In about ten or fifteen minutes after said shooting, according to the testimony of appellant, Eagle returned, going in the direction of the

hotel, accompanied by Dr. Gary. The State's testimony shows that Dr. Gary informed defendant and his companions who he was, and without any provocation, appellant shot Dr. Gary, and then shot Eagle, killing both. Appellant's theory is that he thought Eagle and Gary intended to hurt him, and that he shot in self-defense. The whole transaction appears to have occurred within a short while, and all the antecedent acts complained of in the above bills served strongly to illustrate and make manifest the cruelty and wanton motive prompting appellant and his companions, and are so interwoven and connected with the killing for which he was being tried, that they become part and parcel thereof, and res gestae of the transaction. Leeper & Powell v. State, 29 Texas Crim. App., 69; McKinney v. State, 8 Texas Crim. App., 645. However, appellant insists that McAnally v. State, 7 Texas Ct. Rep., 398; Walker v. State, 7 Texas Ct. Rep., 394; Hill v. State, 7 Texas Ct. Rep., 389, sustain his contention. We do not think so. It is clearly held by this court that extraneous crimes illustrating the motive, intent and identity of appellant are admissible.

Appellant complains of the following portion of the court's charge: "You are instructed that the testimony admitted before you regarding the procurement of arms by defendant and other parties, the occurrence at the Sylvan Hotel before the procurement of arms, and the occurrence at said hotel after said procurement of arms, is admitted before you to be considered by you together with the other testimony in this case, and to be given such weight as, upon a consideration of the entire testimony, you may deem the same entitled to, as a circumstance in determining whether or not defendant had a motive at said time and place in killing J. M. Gary, deceased, and for no other purpose whatever, and under no circumstances will said testimony be considered by you as affecting the defendant's right of self-defense, if you shall believe that the defendant was acting in self-defense in the killing of said J. M. Gary at the time and place of said killing." This and similar charges complained of by appellant were clearly upon the weight of evidence, and the court erred in giving such charges. Walker v. State, 7 Texas Ct. Rep., 395; Hudson v. State, 28 Texas Crim. App., 324; Attaway v. State, 41 Texas Crim. Rep., 395, 55 S. W. Rep., 45. These authorities hold that it is not necessary to charge on motive. However, it does become the duty of the court, wherever extraneous crimes are introduced on a controverted question of intent, to limit the same to that purpose. For collation of authorities, see White's Ann. C. C. P., p. 529. But where another crime forms part and parcel of the motive and res gestae of the motive, it is not proper to charge on the same.

In this connection, appellant complains that the court erred in permitting the State to prove that Dr. Gary was a witness against appellant in another homicide. This evidence is admissible, if it should appear that said defendant knew said fact; but if knowledge is not brought home to defendant, then said testimony is not admissible. However, this can

·be done· under the usual rules of evidence, either by positive or circumstantial testimony.

Appellant also complains that the court erred in refusing to charge on apparent danger. The court properly presented the law of actual attack, but failed to present the law of apparent danger. The testimony of appellant presents this issue, and it should have been so charged; that is, if deceased had made an attack upon appellant, or if appellant believed that he was about to make an attack on him, he would have the right of self-defense, as authorized by the laws of this State. Phillips v. State, 34 Texas Crim. Rep., 564. We do not believe the court erred in failing to charge on manslaughter, as we find no evidence in the record presenting this issue.

We do not deem it necessary to review the other errors assigned. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*