JOHN YOUNG v. THE STATE.

No. 532.  Decided April 19, 1910.

**1.—Murder—Evidence—Husband and Wife—Cross-Examination.**

Where, upon trial of murder, defendant placed his wife upon the stand to prove insulting conduct towards her by the deceased, and that she communicated this fact to him, it was reversible error to permit the State on cross-examination of the wife to compel her to testify to various material matters which were not brought out by the defendant in the examination in chief. Following Yeiral v. State, 56 Texas Crim. Rep., 267, and other cases.

**2.—Same—Evidence—Husband and Wife—Want of Knowledge of Defendant.**

Upon trial of murder, where the defense relied upon insulting conduct by the deceased towards defendant's wife, it was reversible error to permit the State to show acts of familiarity between the deceased and said wife of defendant, of which the defendant was not shown to have had any knowledge at the time of the homicide.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Z. I. Harlan* and *Spivy, Butler & Carter,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, and *Tom Connally,* for the State.—On question of cross-examination of the wife: Marsh v. State, 54 Texas Crim. Rep., 144, 112 S. W. Rep., 320; Morrow v. State, 56 Texas Crim. Rep., 519, 120 S. W. Rep., 492; Ferguson v. State, 57 Texas Crim. Rep., 205, 122 S. W. Rep., 551.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter. The killing occurred at night. The facts show that on the 12th of February, before the homicide on the 29th of September, 1907, appellant was from home; was in the city of Waco in attendance upon the District Court as a juror; that he was absent about three weeks, coming home occasionally during that time. During his

absence deceased, Will Hanson, was in appellant's employ and stayed with his family. On the evening of the 12th of February, about dark, appellant's wife testified that deceased caught her, carried her into an adjoining room, and threw her down upon a bed, stating, in substance, that he intended to have sexual intercourse with her. This met with opposition on her part. One of her boys came into some portion of the house about that time and threw some wood on the gallery. Deceased desisted and left the room. Mrs. Young says she was very much disturbed and excited about the matter. The further details of this transaction are deemed unnecessary to be stated. The following morning deceased came and told her that if she informed her husband of what had occurred that one of them would die; that he intended to arm himself and kill her husband if she told him and a difficulty should result. On the morning of the 29th of the following September, deceased came to the residence of appellant with Frank Owens, who was then making his home there. When Owens and deceased reached appellant's residence appellant had not gotten up. He had been out late the night before with a posse searching for a man who had insulted a lady living in the neighborhood. They went into the room where appellant was still in bed and talked with him awhile. Deceased left the room and went into the adjoining one where Mrs. Young was combing her hair, standing in front of the dresser, and asked her if she was willing to comply with his wishes, or had made up her mind that she would accommodate him. The exact language is not sought to be stated. She repelled this insulting language. Directly deceased and Owens went away. After appellant had gotten up, his wife informed him of the insults for the first time. Deceased had gone out in the neighborhood of his old home. Appellant watched for him during the day, as deceased was expected to return through the little village where appellant was residing, and where he carried on a mercantile business, as well as a ginning establishment. However, deceased returned home without appellant seeing him. Upon learning this, he armed himself and went to the little town of Mooreville, where deceased was then living. Upon reaching this village he sought deceased, called him from the house where he was boarding out to the gate. Some conversation occurred at this point, which is not very definite, and unnecessary to state. Deceased then got in the buggy with appellant, and they drove off a short distance near a well. Directly after reaching the well the fatal trouble occurred in which deceased lost his life. There were no eyewitnesses to the shooting except, of course, deceased and appellant. Appellant testified in his own behalf, and, among other things, stated that deceased had admitted to him the truthfulness of what Mrs. Young had said and reached for his pistol, whereupon appellant shot him, from which wound he subsequently died. This may be a sufficient statement to bring in review the questions necessary to discuss and decide.

1. Appellant placed his wife upon the stand. She testified to the

conduct on the part of deceased towards her on the 12th of February, and to the threats made on February 13, to arm himself and kill appellant. She also testified to the insulting language to her on the morning of the 29th of September, and that she had communicated these matters to her husband. She also testified to the effect it had upon his mind as exhibited at the time she made the communication. This is about the substance of her testimony as elicited by appellant. Upon cross-examination she was permitted, over appellant's objection, to testify to various matters which were not brought out by appellant, and which were rather of a serious and damaging nature to appellant's self-defense theory. Among other things, she was permitted to detail before the jury the fact that deceased had been at their home, and that she had made up his bed and cleaned up the room occupied by deceased, and that she had never seen any pistol about the room, and that in fact she had never seen him with a pistol, and that she had never looked for a pistol. There are other matters of similar import that were also elicited from her by the State. This testimony was inadmissible. There was nothing brought out in direct examination of the wife relating to the deceased having secured a pistol, or that he did not secure one. This may have had and doubtless did have a serious bearing upon appellant's theory of self-defense. These matters were not known to appellant. They were not communicated to him by the wife. The communication she made to him was that deceased had told her he would arm himself and be ready for her husband in case she told her husband of these matters and any trouble would arise. This was clearly not within the rule of cross-examination of the wife, and was new matter brought out by the State which was not authorized. Stewart v. State, 52 Texas Crim. Rep., 273; Jones v. State, 38 Texas Crim. Rep., 87; Richards v. State, 53 Texas Crim. Rep., 400; Hobbs v. State, 53 Texas Crim. Rep., 71; Jones v. State, 51 Texas Crim. Rep., 472; Yeiral v. State, 56 Texas Crim. Rep., 267, 119 S. W. Rep., 848.

2. There were matters brought out by the State from the witness Hanson, brother of deceased, and Mrs. Strawhorn to the effect, in substance, that they had seen at different times the wife of appellant with deceased apparently talking and associating with him in a friendly manner, and on one occasion Mrs. Strawhorn stated that she saw deceased go to the home of appellant where the wife of appellant was, in the absence of appellant, and go into one of the rooms of the house, and remain in there for something like half an hour. We think the admission of this testimony is reversible error. These matters were not communicated to appellant, and he was ignorant of their existence. Mrs. Young, wife of appellant, denied those matters, and they became issues upon the trial. Had appellant been aware of this conduct it would have had a very important bearing upon the case and upon his relation to this homicide, but they could not be used against him in the absence of such knowledge. Evidence impugning the con-

duct and chastity of the alleged insulted female relation can not be used against the slaying relative in the absence of information or knowledge on his part of such conduct. This evidence was introduced evidently for the purpose, on the part of the State, especially that with reference to the visit of deceased to the home of appellant in his absence, and his going into the room, of showing that the relation of these parties—wife of appellant and deceased—was of a criminal nature. This character of evidence can not be used against the accused in a trial of this sort in the absence of knowledge on his part. The discussion of the above matters, we think, is sufficient to indicate to the trial court as to how the case should be tried upon another trial without going into all of the matters set out. Upon another trial this evidence should not be admitted. The above discussion will cover those questions with reference to the cross-examination of the wife, and matters introduced through the mouth of other witnesses, of which appellant was ignorant as to the conduct of his wife. Without going further into the matters relied upon for reversal, we hold the case has not been tried as it should have been, and that the admission of the testimony mentioned was erroneous, for which the judgment will be reversed and the cause remanded.

*Reversed and remanded.*