### LUTHER BERWICK v. THE STATE.

No. 13465. Delivered October 8, 1930.
Reported in 31 S. W. (2d) 655.

The opinion states the case.

*J. W. Williams* and *E. B. Lamson,* both of Port Arthur, and *Howth, Adams & Hart,* of Beaumont, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

On the question of the admissibility of evidence given by witness as to a conversation with and a statement by one of the parties killed occurring before the killing and which was never communicated to appellant, the attorneys for appellant cite Branch's Ann. Penal Code, Section 1930; Bromley v. State, 17 S. W. 140; Johnson v. State, 2 S. W. 609.                          *Reporter.*

MARTIN, JUDGE.—Offense, murder; penalty, death.

Appellant shot and killed Miss Bell Crow and William A. Byrd about eleven o'clock at night in the edge of a street in the City of Port Arthur.

It was the State's theory and its evidence tended to show that appellant's motive for the killing was jealousy; that he had previously threatened them both if their associations continued, and that the killing was the consummation of a previously formed design growing out of his infatuation for the girl and his belief that Byrd was about to obtain the affections of his sweetheart.

For the appellant the testimony tends to show that he was madly in love with Miss Crow; that his attentions to her dated back for about two years, during which time he had been very devoted to her, giving to her about thirty per cent of his income, due to her poverty; that the two were engaged to be married, which event was to be consummated as soon as he finished a course in electric welding. Appellant testified that he nearly always went down at twelve o'clock at night and took Miss Crow home from her work; that they had a goodnight signal made with the horn of his car; that on the night of the tragedy he had been delivering some whisky to the friends of his father who had asked him to do so; that Miss Crow knew of this and was uneasy; that he started by the home of her sister, where she was staying on that night, to give his customary signal; that he unexpectedly came upon his fiancee, Miss Crow, and Byrd parked in a car with her in Byrd's arms; that he stopped and they both alighted from the car and Byrd started to attack him, whereupon he shot in self-defense, killing Byrd on

purpose and Miss Crow accidentally. He further testified that he did not know of their presence there, nor of her association with Byrd, and that his mind was so agitated when he came upon the girl, he was about to marry, in the arms of another man that he lost control of himself.

This is a sufficient background for the legal propositions hereinafter discussed.

Miss Crow had formerly lived with her sister, Mrs. Gondalfo, but at the time of the tragedy was living with her father and stepmother. On the date of the killing she had gone to spend the night with her sister. Mr. and Mrs. Gondalfo were each permitted to testify over objections that they thought she was moving permanently back to her sister's home and on cross-examination they further testified that their reason for thinking so was because she was so delighted to be back there, though she did not tell them that she intended to move back. When this testimony was offered, the district attorney stated in the presence of the jury that it was offered to show that Miss Bell Crow was thereby "breaking or had broken her engagement to marry the defendant by her act of leaving her father's house where the defendant was welcome and moving to her sister's house where the defendant was not welcome, to prove motive for the killing." It further appears that motion was made to strike out this testimony, as well as the remarks of the County Attorney. The bill of exception recites that the evidence does not show that Miss Crow had broken or was intending to break her engagement to marry the appellant or that any of these matters were known to appellant. This record shows that Miss Crow had lived with her sister prior to moving to her stepmother's, where she had lived for a few months previous to the tragedy.

The testimony of these witnesses, together with the statement of the county attorney, tended to prove motive for the killing based upon conjecture and which itself was unknown to the accused. The reason for her moving is shown to have been pure speculation and based upon this the county attorney was permitted to make a statement, the probable meaning of which to the jury was that appellant killed the two because Miss Crow had broken her engagement. Manifestly facts unknown to the accused cannot be proven to show motive for a killing. Phillips v. State, 22 Tex. Crim. Apps. 139; Attaway v. State, 41 Tex. Crim. Rep. 397; Maclin v. State, 144 S. W. 960.

Of similar import is the testimony of Mrs. Green, who was permitted to testify over objection that she was with Miss Crow and Byrd the day before the shooting in an automobile and heard Miss Crow state that she did not want to pass the house of appellant's sister because appellant was "watching her" and also the testimony of Miss Velma Hebert, who was permitted to testify over objection that on the night of the killing the deceased Miss Crow had told her not to tell appellant that she was with Byrd, it appearing that she had left the presence of Miss Hebert with Byrd, and that she afterwards saw appellant and did not tell him. The State had proved by one witness that she had heard appellant threaten the life of both of the deceased to Miss Crow.

It is correctly insisted, we think, that the above testimony was hearsay (it being certified in the bill that it was never communicated to appellant) and tended to corroborate the one witness who testified to threats in that it showed that Miss Crow was uneasy and was afraid of appellant, and that it tended especially to destroy his defense of a killing without malice.

The rule is now too well established to require any discussion that proof of facts of the character noted above which were unknown to the accused and which unfavorably affected his defense is not admissible. See following authorities: Haynie v. State, 21 S. W. (2nd) 726; Williams v. State, 40 Tex. Crim. Rep. 570; Tubbs v. State, 50 Tex. Crim. Rep. 143; Branch's P. C., Sec. 1930, and authorities there collated. Appellant in this case defended on the ground of self-defense and further that the killing was not upon malice. The latter defense especially, we think, finds sufficient support in the evidence to justify its acceptance by the jury. We are therefore not able to say that proof of hearsay conjectural facts and of the undisclosed fears in the mind of the deceased, which were unknown to the accused, may not have influenced the jury in the rendition of this extreme penalty.

Because of these errors, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.