## ALVIS GRAVES v. THE STATE.

No. 14682.   Delivered December 9, 1931.

The opinion states the case.

*Vickers & Campbell,* of Lubbock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for life.

The homicide occurred at a dance, deceased, Horace L. Smith, and his wife having gone there with appellant. Appellant left the dance with a promise to return for deceased and his wife. The state's version of the homicide was, in substance, as follows: Appellant returned to the dance about 11:30 p. m., which was the time he had agreed to call for deceased and his wife. While Mrs. Smith was dancing the last set with Tom Simpson, appellant was at the front door watching them. As the dancers approached him, appellant gritted his teeth and made some remark to Mrs. Smith which none of the witnesses understood. Some of the witnesses for the state testified that appellant raised his hand and pointed at Mrs. Smith. Appellant appeared to be angry. Deceased came out of the house, approached appellant and engaged him in conversation. Appellant told deceased that he was going to kill Tom Simpson. Deceased said: "No you are not." An argument ensued. The witnesses were unable to understand what was said by appellant and deceased. While appellant and deceased were talking Bob Averett approached them. Appellant backed off the porch with Averett and deceased following him. After appellant had backed a few feet away from the porch, he drew a pistol and fired about six shots in rapid succession. Averett and deceased were

mortally wounded. Averett and deceased had made no demonstration toward appellant other than to follow him as he backed away. Deceased made a dying declaration. He said: "When Alvis Graves (appellant) shot me he cursed me and said, 'I have got you and I am going to get Tom Simpson and then I am through with you sons of b's.'"

Appellant testified, in substance, that deceased came to the door where he was standing and engaged him in conversation; that he told deceased to get his wife and they would go home; that deceased asked where his wife was; that he told deceased she was talking to Tom Simpson; that deceased became angry and stated to him that he was tired of him talking about Simpson; that he told deceased he was sorry he had said anything; that deceased wanted to fight him, and he tried to get him in a good humor; that Bob Averett approached him and deceased, saying, "Let me to that s— of a b—; that deceased and Averett started towards him and he backed away; that he backed off of the porch and stumbled; that before he could recover his balance deceased and Averett took hold of him and began to hit him; that he continued to back away and deceased said: "Hold him, I will fix him"; that he was unable to break aawy from said parties; that after he had backed ten or fifteen feet, he drew his pistol and fired; that he believed Averett and deceased were going to kill him; that he did not know how many shots he fired, as Averett and deceased were rushing him and he was squirming in an endeavor to get loose. Appellant introduced witnesses who corroborated his version of the transaction.

Appellant and the wife of deceased had for about three years before the homicide been guilty of illicit and improper relations. Deceased's wife testified that deceased did not know of her relations with appellant. She testified further that her husband and appellant had had a misunderstanding two years before the homicide. She said: "My husband had been making some talk about Alvis (appellant) at that time." She testified that she sent word to appellant to stay out of deceased's way. Appellant testified that about two years before the homicide he had been informed that deceased was looking for him, and that he called upon an officer to talk to deceased about the matter. A witness for appellant testified that a few weeks before the homicide, shortly after he had seen appellant drive away in his automobile with deceased's wife, deceased appeared and asked him if he had seen his wife. Upon being informed that she was with appellant, deceased said: "I will kill the s— of a b— if I have to go to the electric chair in fifteen minutes." Appellant frequently visited deceased's home during his absence. The neighbors of deceased were aware of this fact. According to the testimony of deceased's wife, she had asked appellant not to come to her home as often as he did, as she was afraid that trouble would result between him and deceased. She said that appellant became disagreeable. She testified that appellant

had on occasions taken her to task for dancing with certain men, among them being Simpson.

Appellant and deceased had been on friendly terms for several months, according to appellant's testimony. He and deceased had hunted together shortly prior to the homicide. He had taken deceased and his wife to the dance in his automobile. As tending to rebut appellant's theory that his feelings toward deceased were friendly, the state showed that appellant carried a pistol to the dance on his person and that he had a gun in his automobile. Appellant testified that it had long been his custom to carry a gun in his car.

Appellant objected to the testimony touching his illicit relations with the wife of deceased. This testimony was properly admitted. It tended to show the probable feelings of appellant toward deceased, and to illustrate the motive for appellant's actions at the time of the homicide. The circumstances, in our opinion, warranted the conclusion that appellant knew that deceased was aware that he and the wife of deceased were criminally intimate. Hence proof of the nature in question would illustrate the relations existing between appellant and deceased and tend to show motive. Branch's Annotated Penal Code, sec. 1879; Lawrence v. State, 112 Texas Crim. Rep., 659, 18 S. W. (2d) 181.

The court instructed the jury that the testimony touching the relations between appellant and deceased's wife could be considered for one purpose only, and that was as to whether or not it showed motive, if any, on the part of appellant in shooting deceased. Appellant sought no charge limiting the testimony under consideration, but objected to a limitation of such evidence to proof of motive. Ordinarily it is not necessary nor proper for the court to limit evidence on the issue of motive or malice. Branch's Annotated Penal Code, sec. 1885; Lawrence v. State, 112 Texas Crim. Rep., 659, 18 S. W. (2d) 181; Malcek v. State, 33 Texas Crim. Rep., 14, 24 S. W., 417; Terry v. State, 45 Texas Crim. Rep., 264, 76 S. W., 928. It was said in Lawrence v. State, supra, that the court should not undertake to limit such testimony unless there is danger of the jury appropriating it to an improper use. According to appellant's testimony two years before the homicide deceased had entertained ill will toward him. This was after appellant had become criminally intimate with the wife of deceased. A few weeks before the homicide, according to one of appellant's witnesses, deceased had threatened to kill appellant. It was shown circumstantially that deceased knew of the relations between his wife and appellant. The jury would have been warranted in concluding that appellant was aware that deceased knew of his criminal intimacy with his wife, and that he had avoided difficulties with deceased in the consciousness that he had wronged deceased. According to appellant's testimony, deceased began the difficulty that ended in his death. Appellant's testimony raised the issue of self-defense,

which was submitted in the court's charge. Appellant might have been impressed with the view when the difficulty arose that deceased intended to kill him on account of his relations with deceased's wife. The testimony in question might have been considered by the jury in solving the issue of self-defense had the court not limited it to the question of motive. If such testimony had not been limited it might have impressed the jury with the view that appellant believed when deceased was backing him off of the porch that deceased was going to kill him on account of the fact that he had wronged deceased. In Pannell v. State, 54 Texas Crim. Rep., 498, 113 S. W., 536, the court limited testimony similar to that under consideration here to the question of motive. In holding that the testimony should not have been limited, Judge Davidson, speaking for the court, said:

"The evidence shows that appellant had tried to evade difficulties with the deceased, and it may have been on account of the fact that he had wronged deceased; but from whatever motive it occurred, he had declined to fight him, and sought to evade rather than bring on the difficulty. The deceased had pressed the matter which ended in his death. Appellant did not forfeit his right of self-defense under the circumstances of this case, if it be conceded he had been having intercourse with deceased's wife. While this was an adequate cause resulting in favor of the deceased, if accompanied by sudden passion, to reduce his killing of appellant, had it occurred, to manslaughter, still we have appellant and not deceased on trial, and the case must be viewed from appellant's standpoint. This would not require him to stand and be shot to death; his right of self-defense under the circumstances would be perfect. It may have left on the mind of appellant, and doubtless did, an impression that deceased intended to press the difficulty to his (appellant's) death, and there was no other course left to him but to shoot, and the fact may have operated upon his mind most cogently that his life was at the time being sought by the deceased. It was a cogent reason in appellant's favor, under the law of self-defense, rather than against him, to show a criminal motive in the killing, under the facts.

"Again, this charge singles out one fact and charges adversely to appellant upon it. This is a charge upon the weight of the evidence, and in a very hurtful manner to appellant's cause before the jury. It had the tendency to eliminate his right of self-defense, and it selected this one single circumstance as the criterion of his motive for the homicide. Under the decisions as written in this state, this is not only a charge upon the weight of the evidence, but the singling out of a fact and giving it undue prominence, and in such manner as to operate adversely to appellant's rights on the crucial point."

In the light of the record, the opinion is expressed that the giving

of the charge under discussion was erroneous. That such charge was calculated to result in injury to appellant is, we think, obvious.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.