**Antonio Alvarez VASQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–82–0127–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 29, 1984.

Paul Cedillo, Jr., New Braunfels, for appellant.

William A. Meitzen, Fort Bend County Dist. Atty., John F. Healey, Fort Bend County Asst. Dist. Atty., Richmond, for appellee.

Before EVANS, C.J., and DOYLE and LEVY, JJ.

## OPINION

DOYLE, Justice.

The appellant was assessed a 70-year sentence by a jury after it convicted him of murdering his 88 year old father.

There were no eyewitnesses to the crime. Teodulo Vasquez, the deceased, was found severely wounded at approximately 1 p.m. on February 24, 1979 beside a woodpile at his farm near Richmond in Fort Bend County. He died later that afternoon.

In the first of three grounds of error, appellant challenges the sufficiency of the evidence to prove beyond a reasonable doubt that he killed his father.

Because there is no variance between the state's and appellant's version of the evidence adduced at the trial, we shall use principally the state's account of the witnesses' testimony.

Filimon Vasquez, brother of Antonio Vasquez and the son of Teodulo Vasquez, testified that he lived with his father, the appellant and his sister, Petra, on their father's farm near Schultz's store. Filimon further stated that on the morning of February 24, 1979, Antonio was too drunk to talk to, and that when he left the farm at 9 a.m., Petra, his father, and Antonio remained at the farm. When he returned at approximately 1 p.m., he found his father lying beside a woodpile at their farm with blood around him. It was indicated by the testimony of Filimon that Teodulo was in the habit of carrying money on him and that he had just gotten some money and was carrying it on the morning of February 24, 1979. It was also deduced from Filimon that Antonio on more than one occasion argued with Teodulo over Teodulo's will.

Larry Vasquez, the grandson of Teodulo Vasquez, stated that he arrived at Teodulo's farm at 10 a.m. on February 24, 1979. While there, he observed Antonio cursing at his sister, Petra, and at Larry's daughter, and arguing with Teodulo, who was chopping wood by a woodpile. Antonio appeared to be drunk. Larry further testified that Antonio never worked, and that

he never knew him to have any money. Larry testified that he left the farm at approximately 11 a.m. and that he remained at the farm for about an hour and that during that time, no one other than himself, Petra, Teodulo, and Antonio, were at the farm. He also testified that Antonio hollered at his retarded sister, Petra, asking, "Where is my God damn radio?"

The testimony of Patrick Vasquez, the son of Teodulo, indicated that Teodulo owned approximately 112 acres of farmland, and that on Saturday, February 24, 1979, he was going to see his father at the farm, because his father was going to loan him approximately $500 to make delinquent truck payments. At 12 noon, Patrick received a phone call indicating that something had happened at his father's house.

Joe Vasquez, another son of Teodulo Vasquez, testified that Antonio had no job in February 1979. He also testified that Teodulo, by his will, had planned to leave all of his land to his children equally, but that in early February he told Joe that he was going to redraft his will and leave Antonio out of it. As of the 24th of February, 1979, Teodulo had not effected this change.

Gregorio Ramirez, a casual acquaintance of the appellant, testified that on the day in question he had given appellant a ride sometime after 12 noon. Ramirez smelled blood when the defendant entered his car. When the appellant exited the car, he pulled a roll of bills from his pocket and peeled off a $20 bill, even though he had promised Ramirez only $10 at the time he was picked up.

Olivia Ramirez, wife of Gregorio, also testified that when she and her husband picked up Antonio Vasquez, the smell of blood was evident. She said they had picked him up outside the Swinging Door, a restaurant in Richmond, which was only a mile away from Schultz's Store. Further, she said that the appellant said that he was "running away."

Fort Bend County Deputy Gary Stone testified that on February 24, 1979, he was

summoned to 3805 Holmes Road in Richmond. At this address, he found Teodulo Vasquez lying on the ground, bleeding from a wound to the head. An ambulance was summoned, and Teodulo Vasquez was taken to a hospital, where he expired.

Officer Billy Frank Teague said that he arrested Antonio Vasquez at a bar in Richmond at 8:50 p.m. on February 24, 1979 because he was intoxicated. Teague further testified that at the jail $440.40 was taken from the appellant.

Officer Michael Randolph, a jailer employed by Fort Bend County, testified that he observed what appeared to be blood stains on a boot and shirt of the appellant, and that he gave these articles to Officer Larry Spillers. Spillers stated that he took these items from Officer Randolph and brought them to DPS Officer Bobby Urbanowski for analysis. Spillers also testified that he dusted an ax and sledge hammer found at the murder scene, but could not lift any fingerprints from it.

Texas Department of Public Safety Officer Bobby Urbanowski, qualified as a Department of Public Safety chemist, stated that he had examined several articles of what proved to be the appellant's clothing. These items were given to him by Fort Bend County Deputy Larry Spiller. Urbanowski testified that he determined that human blood, of blood type "A" was found on the back right shoulder area of a shirt, and also upon the left boot. Randolph testified that he had conducted an extensive search on the whole body of the appellant on February 24, 1979, and found no evidence of scratches, bruises or blood.

The testimony of Dr. Joseph Jachimczyk indicated that an autopsy was conducted on the body of Teodulo Vasquez by Dr. Robert Bucklin on February 25, 1979. The blood type taken from Teodulo Vasquez was determined to be blood type "A". Dr. Jachimczyk gave his opinion that Teodulo Vasquez died as a result of a fractured skull, caused by blunt force trauma to the head.

Dana Boettcher, a member of the Fort Bend County Grand Jury which indicted the appellant, stated that the Grand Jury did not know what had caused the blow to the head of Teodulo Vasquez.

From the foregoing evidence, we observe that appellant was in a foul, belligerent, drunken, cursing mood on the morning of the murder. He argued with the deceased that same morning and he was last seen with his father and sister around 11 a.m. shortly before the time his father was discovered mortally wounded. Soon thereafter, he was picked up near his father's farm by the Ramirez; and flashing a roll of money, he stated he was running away. At that time, the smell of blood was noticeable on him. The appellant's possession of the roll of money, which later proved to be over $400, was never explained. Appellant was then unemployed, and the deceased had a large amount of money on him the date he was murdered. Traces of blood type "A", which was that of the decedent, were found on the boot and shirt of appellant. No wounds, cuts or bruises were found on the appellant's body, tending to negate the possibility that blood on the appellant's shirt and boot was his own. The evidence, though circumstantial, leads to the rational conclusion that appellant murdered his father.

██ In a circumstantial evidence case, we must exclude every other reasonable hypothesis except the guilt of the accused. *Moore v. State,* 640 S.W.2d 300 (Tex.Crim. App.1982); *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983). Further, we must view the evidence in the light most favorable to the verdict. *Houston v. State,* 667 S.W.2d 157 (Tex.App.—Houston [14th Dist.] 1984, pet. den'd). Each circumstantial evidence case must be tested by its own facts. *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Crim.App.1977).

██ Appellant urges that the evidence before us raises the probability that someone other than appellant may have been the murderer. We disagree. The incriminating evidence against appellant, when viewed in the light most favorable to the verdict, was sufficient to support the jury

verdict that the appellant murdered his father. *Brasfield v. State*, 600 S.W.2d 288 (Tex.Crim.App.1980). We overrule appellant's ground of error one.

Appellant argues in his second ground of error that the trial court erred in admitting certain testimony indicating that the deceased intended to exclude appellant from his will. It is appellant's position that this information was hearsay, and because there was no showing that the appellant knew his father was going to take him out of the will, it was reversible error to allow the jury to hear such testimony. However, the cases cited by appellant on this ground are not in point, as they involve situations where the issue of self defense was raised.

The state argues that the will testimony was relevant to show motive, and while there is no direct evidence to show appellant knew of his father's intentions, there is sufficient circumstantial evidence to infer it. *Edmondson v. State*, 109 Tex.Cr.R. 518, 6 S.W.2d 119 (1928).

The only evidence presented by the state, regarding the deceased and his will, was the testimony of the appellant's brothers Filimon and Joe Vasquez. Joe Vasquez testified that his father told him he was going to take Antonio out of the will and that they had discussed it four or five times. However, Joe admitted that his father never actually changed the will before his death. Joe stated that he did not know from his own personal knowledge whether Antonio knew he was going to be removed from the will.

Filimon Vasquez, another brother of appellant, testified that he had seen the appellant and the deceased arguing within two weeks of the incident, but that he did not really know what they were arguing about. Filimon further testified that he had heard appellant and the deceased talk and argue about the will, but that he did not know the details of their arguments.

 The case of *Bailey v. State*, 532 S.W.2d 316 (Tex.Crim.App.1975) is directly in point. In *Bailey*, the court held that the evidence revealing that the deceased planned to alter her will was relevant and admissible, even without a showing that the appellant knew of the deceased's plans. The court further cited *Knapp v. State*, 504 S.W.2d 421 (Tex.Crim.App.1974) for the general rule that in a circumstantial evidence case, the rules of evidence will not be so stringently applied as to exclude evidence which sheds light on the occurrence. The *Bailey* court also held that any error committed in admitting the testimony was harmless in light of the overwhelming evidence of appellant's guilt.

 After reviewing all of the testimony which was given at trial, the only reasonable conclusion which the jury could have reached is that the appellant, and no other, killed the deceased. Thus, the circumstantial evidence overwhelmingly points to the probability that appellant knew that he might be taken out of the deceased's will. It was not improper for the trial court to admit the testimony concerning the intention of the deceased to remove appellant from his will and to let the jury decide the weight to be given to such testimony. Appellant's second ground of error is overruled.

 In his third ground of error, appellant complains that the trial court erred in allowing the introduction of evidence secured as the result of an illegal arrest. Appellant contends that the arrest was without probable cause being established for a warrantless arrest and hence any evidence seized should have been suppressed upon his duly urged motion. We find that the arrest was based on sufficient probable cause.

The appellant bases his contention on the fact that at the time of his arrest the officers claimed that there existed two outstanding warrants on appellant which were never produced in court. However, Officer Sanders, when questioned by Mr. Rosen, testified that appellant was also arrested for public intoxication.

Q. Why did you arrest him for public intoxication?

A. Because he was, in my opinion as a police officer based on experience I have had, he was highly intoxicated.

Q. How long did you have a chance to observe him for?

A. I would say about five minutes before taken (sic) him into custody.

Q. Did you arrest him for public intoxication?

A. Yes, sir.

While it is undisputed that the two outstanding warrants were never produced in court, we need not concern ourselves with this failure, since we may rely wholly on the charge of public intoxication to sustain the validity of the arrest. When asked what he observed about the appellant when he encountered him at the place of arrest, Officer Teague testified that "he was in disarray, smelled strongly of alcohol, swaying, in my opinion, he was intoxicated." Officer Randolph, the jailer at the Fort Bend County jail, also testified that when he checked appellant into the jail on February 24, 1979, appellant was intoxicated; and that he exhibited "slurred speech, bloodshot eyes, the smell of alcoholic beverages on his breath, unsteadiness." Thus it is clear that in the police officers' opinion, appellant was highly intoxicated. Section 42.08 of the Penal Code states that a person commits the offense of public intoxication if he appears in a public place under the influence of alcohol or any other substance, to the degree that he may endanger himself or another. Whether prosecution for the offense of public intoxication would fail or succeed need not be considered by this court in its determination of whether the search and seizure was lawful.

The facts in *Soileau v. State*, 156 Tex. Cr.R. 544, 244 S.W.2d 224 (1951) are similar to those in the case here considered. Houston police on patrol at 3:30 a.m. saw the defendant Soileau drive through a red light. They pursued and arrested him for the traffic violation and while searching his person found a pistol. He was tried and convicted for unlawfully carrying a pistol. In affirming the conviction, Judge Davidson stated:

We are not here dealing with the question of whether appellant was in fact guilty of such violation; all the requirement necessary for the officers to make the arrest was the existence of probable cause authorizing the belief that the traffic offense had been committed. According to the undisputed testimony, the patrolmen were authorized to so conclude and therefore to make the arrest.

In *Britton v. State*, 578 S.W.2d 685, 689 (1978), the Court of Criminal Appeals sets forth the standard and test for a warrantless arrest under section 42.08 of the Penal Code.

It must be borne in mind that we are here faced with the question of proof necessary to establish probable cause for arrest rather than proof essential to a judicial determination of guilt. The test of probable cause for an arrest without a warrant as stated by the United States Supreme Court in *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 [1964] and *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 [1967], is:

"Whether at that moment the facts and circumstances within the officer's knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person] had committed or was committing an offense."

Thus, when an officer is confronted with a person intoxicated in a public place, his determination as to possible danger that may befall the individual is not reviewed under the same standard used in a judicial determination of guilt.

When the officers arrived at Rose's Bar in response to a tip that the appellant would be there, they found him in a state of heavy intoxication. Under such circumstances, the officers were warranted in concluding that the appellant committed the offense of public intoxication. Therefore, the arrest was valid, and so was the search. The motion to suppress was properly denied. *Johnson v. State,* 633 S.W.2d 687 (Tex.App.—Amarillo 1982, pet. ref'd).

Appellant's third ground of error is overruled.

The judgment of the trial court is affirmed.

LEVY, J., dissenting.

LEVY, Justice, dissenting.

Appellant's first ground of error, evidential insufficiency, is difficult enough to resolve because of both the circumstantial nature of the evidence and its marginal weight and implications.

It is even more difficult for me to accept the majority's disposition of the second and third grounds of error. The nearest the evidence approaches to showing, albeit circumstantially, that the appellant knew that his deceased father was planning to remove him from the will was the testimony of appellant's two brothers: Joe admitted that he did not know whether appellant was so informed, and further stated that he had never seen his father arguing with the appellant; and Filimon stated vaguely that appellant and his father were arguing about the deceased's will approximately two weeks before the homicide. It is not disputed by the State that the deceased did not in fact change his will to disinherit the appellant.

Logic, authority, and experience combine to guide me into believing that the circumstances relied on by the State to show that a defendant had a motive to kill the deceased are admissible *only* where it is first shown that the circumstances were probably known to the defendant. See *Bailey v. State*, 532 S.W.2d 316, 325 (Tex.Crim.App. 1975) (dissenting opinion on motion for rehearing); McCormick and Ray, *Texas Law of Evidence Civil and Criminal*, sec. 1534 (Texas Practice 2d ed. 1956); and Wigmore, *Evidence*, sec. 389 at 329 (3d ed. 1940). See also the following cases which were reversed when circumstances were admitted to show a motive for murder but it was *not* shown that the defendant had knowledge of the circumstances: *See e.g., Phillips v. State*, 22 Tex.App. 139, 2 S.W. 601 (1886); *De Leon v. State*, 68 Tex.Cr.R. 625,

155 S.W. 247 (1913); *Young v. State*, 59 Tex.Cr.R. 137, 127 S.W. 1058 (1910); *Black v. State*, 82 Tex.Cr.R. 358, 198 S.W. 959 (1910); (1917); *Kirklin v. State*, 73 Tex. Cr.R. 251, 164 S.W. 1016 (1914); *Terry v. State*, 45 Tex.Cr.R. 264, 76 S.W. 928 (1903); *Berwick v. State*, 116 Tex.Cr.R. 508, 31 S.W.2d 655 (1930); *Edmondson v. State*, 109 Tex.Cr.R. 518, 6 S.W.2d 119 (1928).

It seems to me that the circumstantial evidence was not sufficient to show that appellant knew that he might be disinherited, and such testimony in question was therefore essentially irrelevant, prejudicial, and possibly hearsay. Nor does such testimony become admissible under Section 19.06 of the Texas Penal Code, which permits evidence showing the previous relationship existing between the accused and the deceased, as well as all relevant circumstances going to show the state of mind of the accused at the time of the homicide. Section 19.06 does not change, limit, or extend the general rules of evidence relating to hearsay. *Erwin v. State*, 531 S.W.2d 337 (Tex.Crim.App.1976); *Love v. State*, 581 S.W.2d 679 (Tex.Crim.App.1979); *Nixon v. State*, 587 S.W.2d 709 (Tex.Crim.App.1979).

Because I cannot say that the error in admitting such testimony was rendered harmless in light of the overwhelming evidence of appellant's guilt, as in *Bailey v. State, supra* —because the evidence herein, while sufficient to support the jury's verdict, was not overwhelming—I would sustain appellant's second ground of error.

In his third ground of error, appellant argues that the trial court erred in overruling his motion to suppress, thereby allowing into evidence appellant's clothes, boots, and the money found on his person. The State urges that appellant's arrest was lawfully based upon his being publicly intoxicated, and that the search of his person was incidental to such arrest and accordingly permissible. *Pulido v. State*, 503 S.W.2d 578 (Tex.Crim.App.1974). Seizable items, such as instruments or evidence of the crime or contraband which come into the possession of an officer lawfully searching in connection with another crime

or for another purpose, may be retained and used in the prosecution to which they relate. *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Pulido v. State, supra.*

Appellant argues that the arresting officer did not have any warrant for his arrest, but claimed only that he had information that there were outstanding warrants for appellant's arrest. Tex.Code Crim.P.Ann. art. 15.26. In *Gant v. State,* 649 S.W.2d 30 (Tex.Crim.App.1983), it was held that when an accused objects to admission of evidence on the ground it is tainted by a warrantless arrest, and the State relies on an arrest warrant, in the absence of waiver, error results unless the arrest warrant is exhibited to the trial judge for a ruling. *Id.,* at 33. The court, applying the basic holding of *Cannady v. State,* 582 S.W.2d 467 (Tex. Crim.App.1979), requiring production at trial of search warrants, found no basis in reason to distinguish the principle when applying it to arrest warrants.

The arrest warrants were never produced at trial by the State in the instant case— nor was their production waived. The State argues, however, that sec. 14.01(b) of the Code of Criminal Procedure allows a peace officer to arrest a party without a warrant for an offense committed in his presence or within the view of the officer, and the fact that the officers observed appellant highly intoxicated in a public place gave the officers probable cause to arrest appellant for public intoxication. That offense, however, consists of more than mere intoxication in a public place. It requires extreme intoxication *and* public presence under circumstances that indicate a danger to self or a threat to the security of others. *See Dickey v. State,* 552 S.W.2d 467 (Tex. Crim.App.1977); Tex.Penal Code Ann. art. 42.08 (Vernon 1974).

In the instant case, the arresting officers testified that the appellant was highly intoxicated at the time of his arrest, and was playing pool. Playing pool is generally thought to require some degree of skill unlikely to be compatible with extreme intoxication. Furthermore, there was *no* testimony as to the appellant's danger to himself or to others, and in the absence of such

testimony, the State has failed to establish probable cause justifying an arrest for public intoxication. See *Davis v. State,* 576 S.W.2d 378 (Tex.Crim.App.1978), which in a footnote at 380 states:

We also note that there was not probable cause to arrest for public intoxication. In order to arrest for public intoxication under V.T.C.A., Penal Code Sec. 42.08, the arresting officer must have reason to believe the suspect is intoxicated "to the degree that he may endanger himself or another." In this instance appellant was walking along a sidewalk in the early afternoon without any difficulty when first observed by the officer. Only on close inspection did Davis appear to the officer to be intoxicated because he was somewhat unsteady on his feet and his speech was slurred. There was no indication that he was in any way a danger to himself or anyone else. There was no probable cause for an arrest for public intoxication, had there been such an arrest.

No other justification for the warrantless arrest, under either Chapter 14 of the Code of Criminal Procedure or any other authority, has been claimed by the State.

Accordingly, I would sustain appellant's third ground of error, reverse the judgment of the trial court, and remand the cause for a new trial.