GEORGE MEREDITH v. THE STATE.

No. 12774.   Delivered November 27, 1929.
Rehearing denied May 7, 1930.
Reported in 27 S. W. (2d) 222.

The opinion states the case.

*Moore and Wilson* of Amarillo, for appellant.

*A. A. Dawson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for theft of property of the value of more than fifty dollars; punishment, two years in the penitentiary.

A negro woman cooked for a family and lived with her husband in a servant's house adjoining the alley in the back yard. Appellant occasionally cut the grass in said yard and knew said woman and her husband. He was charged in this case with theft on November 23rd, 1928, of two rings from said woman. In developing its case the State proved that on October 16, 1928, Jack Sowell, the woman mentioned, missed her rings one night, was phoned to come to the jail the next morning, went, found appellant therein, and was there handed her said rings by appellant who was confined therein on a charge of drunkenness. In the continuous development of its case the State further proved that appellant got out of jail about November 13th, and that on November 23rd at about one o'clock P. M. he was seen by Jack Sowell leaving her house, and that he failed or refused to stop when hailed but instead "peartened up" and left, and that in a few minutes thereafter she went to her house and found same in much disorder and confusion, and that her rings and some sixteen dollars in money were taken. She testified that she was at

the house about an hour before and that the house was in order and the rings and money were there. She had occasion to get some money out of her purse on this trip to her house. After this evidence was introduced appellant demanded an election by the State as to which transaction it would stand on in this prosecution, and the State having elected to prosecute for the transaction of date November 23rd, appellant moved the court to strike from the record all testimony as to the transaction of October 16th, which motion was denied and a bill of exception taken. Substantially the same complaint is made in another bill of exception which is also in the record.

We find in this record an excellent brief on behalf of appellant which shows much care in preparation and effort apparently in ascertaining and stating the law applicable,—a practice which ought always to obtain. All too often appeals come before us from convictions wherein not only the liberties but sometimes the lives of citizens are declared forfeit, whose records show attorneys to have been retained, but in which no briefs appear. We try in all cases to find and apply the law correctly, but our labors are greatly lessened when both parties to the controversy file briefs correctly citing the precedents and authorities relied on to support the respective contentions.

On the contention in this case that the trial court erred in admitting,—in the first instance, and then in refusing to exclude from the jury after the State had made its election, in the next instance, the testimony of what occurred on October 16th, appellant cites many authorities, the soundness of which we do not doubt, as laying down general rules rejecting evidence of extraneous crimes and offenses save in certain cases. Many of these authorities assert that the law upholding such proof in the excepted cases, is as well settled as the general rule rejecting it otherwise. We might state here generally that unless the testimony of what occurred October 16th, in the instant case, comes within one of the exceptions named in these authorities, it should have been rejected.

This was a case of circumstantial evidence, and in such case any fact which, when proved, aided in establishing identity, guilty knowledge or connection with the offense on trial, or intent, res gestae, system, etc., would be admissible. As said in Frazier v. State, 246 S. W. Rep. 391:

"Every circumstance reasonably calculated to illuminate the transaction in question, and to make probable the guilty connection therewith of the accused, should be allowed to go to the jury."

See Thomas v. State, 282 S. W. Rep. 237, and authorities cited. Branch's Ann. P. C., Sec. 166 and cases cited. We take it that proof which established knowledge on the part of appellant that Jack Sowell owned the rings in question, or that appellant desired same, or had tried to get them, or that he knew of her habit of leaving them in her house while she was away, or that he knew where she kept them,—would beyond doubt be admissible as relevant; also that the fact that in making such proof the State necessarily developed that appellant had committed another and different theft, would be no sufficient ground for the rejection of such testimony. House v. State, 16 Texas Crim. App. 25; Kelley v. State, 18 Texas Crim. App. 262; Thomas v. State, 103 Texas Crim. Rep. 673. Applying to the facts in this case what has just been said we find,—the State by circumstantial evidence sought to satisfy the jury beyond a reasonable doubt that about one o'clock P. M. on November 23rd this appellant took from Jack Sowell's house two diamond rings and some money which were in said house, when she left same about twelve o'clock. That appellant was seen going from the alley back of said servant house into the yard where said house was situated, was a circumstance; that he was seen leaving said house where he did not live and had no business, at about one o'clock on said date, was another; that he did not stop or respond when whistled at but quickened his pace, was another; that somewhere between noon and three o'clock of said date appellant paid up some room rent which he owed, would be another; that he told the party with whom he had been rooming that he was going to leave town for a while, was another; that he did leave town, was another. In such case if it could be shown that he knew, before the alleged theft in November, that Jack Sowell owned such rings, and that she kept them in said house, and that she left them there while she was at her work cooking,—these circumstances would materially strengthen the State's case and add to the probative force of the other circumstances above mentioned. Also if he knew that the rings were kept in a certain place and it should develop that at once after he was seen leaving said house about one o'clock on November 23rd, that said room was inspected and found to be in much confusion and disorder, a condition wholly different from what had prevailed an hour before and indicative of a search, these facts would all become relevant circumstances to be considered by the jury. That appellant knew that Jack Sowell owned such rings, and that she kept them in said house, and left them there when she went to work,—was all supplied by proof

of what occurred on October 16th, when, according to the testimony, he took said rings from said house in Jack Sowell's absence, and from a place different from the one in which she kept them on November 23rd. Said testimony was admissible. This disposes of appellant's bills of exception Nos. 1 and 2.

It being relevant to prove that appellant took from said house in October, in the absence of Jack Sowell, said rings,—we do not see how the argument of State's attorney in effect that in November the defendant completed what he had begun in October, could be deemed dehors the record or of improper effect.

The court below in his charge told the jury that they could not convict appellant for the taking of said rings in October, nor at all unless they believed beyond a reasonable doubt that he took them in November, and further undertook to limit the purpose for which testimony of the October transaction was admitted. Appellant excepted to this on the ground that, if admissible at all, said October transaction was admissible as showing guilty knowledge, intent or motive, and that the court should have limited such testimony to the purpose for which it was admitted. No special charge on the subject was submitted or attempted. The purpose of the admission of such testimony was apparent. It was to establish links in the chain of circumstances leading the minds of the jury to a conclusion of guilt by showing that appellant prior to the time of the alleged theft knew that Jack Sowell owned the rings, that she kept them in the house, and at times when she was away from it. To have told the jury, as suggested in the exception, that they could consider such testimony, if at all, only as showing "guilty knowledge or intent or motive," would neither have enlightened nor aided nor restrained them. There was no affirmative defensive theory of lack of intent, or of innocent connection with said rings. Knowledge that Jack Sowell had such rings, and where she kept them when not at her house, would not of necessity be guilty knowledge, and the inclusion of the things suggested by the exception to the charge, as we view it, might easily have confused the jury more than it could have helped. While not approving the form of charge as given, we are not allowed to reverse, under our statute, for errors in the charge, unless injury appears probable, which we do not believe. We are of opinion the facts herein are sufficient.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The only question raised is as to the pertinence of proof relative to the supposed taking of the rings which form part of the property alleged to have been taken by appellant, at a time prior to the one alleged herein. It becomes necessary to make a rather extended statement of the facts in order to make clear the necessity for such proof.

The two diamond rings of Jack Sowell, prosecutrix, were stolen on November 23, 1928, from a two room servant house situated in the back yard of Mr. Rule, which house was occupied by Jack Sowell and her husband, Isaiah. Appellant lived in the same town on Polk Street, and during the summer preceding this theft had cut the grass in Mr. Rule's yard every other week. The rings were never recovered or located after their loss. To support the theory that appellant took them, resort was necessarily had to circumstantial evidence. It was shown that he knew the Sowell woman and her husband and occasionally visited them at night. During the month of October Jack kept her rings in a Boston bag on or in her bed, but in November, at the time of this alleged theft, after the October event herein set out, she had transferred them to a deposit box which she kept in a dresser drawer where her purse seems also to have been kept. In her purse were some fifteen or sixteen dollars. She testified that on November 23rd at about one P. M. she saw appellant leaving her house, which was the only time she had ever seen him there in the daytime. She was working at the time in her employer's house, and said when she got to the back door appellant had gotten through the back yard gate and was outside. She whistled to him, and he "Kind of trotted off— got pearter, did not answer,—kept going,—not to say run but he just peartened up." Going directly to her said house Jack found the room all torn up, the beds turned up, the dresser drawer empty, the purse empty, and the rings gone from the box which had been taken from out said dresser drawer. She further testified that she had been at her house about an hour before to get money out of her purse, and that the room was then in order, and the purse and box were all right and in the dresser drawer. She communicated with her husband and they made search for appellant, going to his house on Polk Street, and looking for him all that day, the next day and all the following week, but did not see him again until he was brought into the court room on February, 1929. Another negro woman testified to seeing appellant go in at the back end of the Rule yard where Jack

Sowell lived in November. Still another negro woman testified that appellant roomed at her house and owed her room rent, and on the afternoon of November 23rd, 1928, he came to her house, paid her what he owed her, and told her he was going to leave town for a while. About thirty or forty-five minutes after he left her house Isaiah Sowell came to her house looking for appellant. Isaiah Sowell testified on the trial that somewhere about two-thirty or three o'clock that day he learned of the loss of his wife's rings and went at once to the rooming house where appellant lived and inquired for him, but did not find him.

These facts show that some one took Jack Sowell's rings during the hour that intervened between her two visits to her home, i. e. the visit at a quarter to twelve when she left her room in perfect order, her money in the purse and her rings in the box, in the dresser drawer,—and the second visit at one o'clock after she saw appellant leave her house, when she went out to same and found the room in disorder and the beds turned up, the purse empty, the box taken out of the drawer and the rings gone. Appellant having been seen coming out of said house during said time,—his hurried departure, his refusal to stop if he heard Jack whistle, his appearance at his landlady's house with money, his announced and executed purpose of leaving Amarillo that day, would all be circumstances pointing to him as the guilty party, but as the rings were never seen in his possession, and no showing had thus been made as to his knowledge of the rings, or that Jack Sowell had such property, the evidence might be deemed inconclusive. The following pertinent inquiries might arise: Did appellant know in November that Jack had such rings? Did he know where she kept them? Had he ever seen them? Had he ever shown or expressed any desire for them? Had he ever been in her house before in her absence? If so, for what purpose? How came the beds turned up and the room torn up when the rings were taken? Did this condition evidence a search for these particular rings by some one who knew of their presence and where they had been aforetime kept? These questions could not be asked and answered by her. Her answers would be but opinions deduced from facts which themselves should be narrated to the jury for their deduction and inference, not hers. To shed light, "Turn in on," so to speak, on these material inquiries, the State showed that about October 16, 1928, or approximately a month before this theft, Jack missed her diamonds from the Boston bag kept in or on her bed, also that the same night she missed her diamonds appellant was arrested

for drunkenness and put in jail for said offense. The next morning he induced officer Weir, as shown by Weir's testimony, to telephone to Jack that he wanted to see her at the jail. She went down at once and he took her rings out of his pocket, tied up in a handkerchief, and gave them to her. No charge of theft was made against him, but he stayed in jail as a result apparently of his drunkenness charge until November 13th, when he was released. Proof of these facts would beyond doubt shed light on each of the pertinent inquiries above mentioned. If this be true such proof would be admissible even though it might tend to suggest that he took the rings intending to steal them in October. Proof that he took the rings from in or on the bed where she kept them secreted in October, would not only shed light on the fact that he knew she had the rings, and on the fact that he wanted them, but also on the proposition that he searched for them on November 23rd by turning the beds over, etc., and would account for the fact that he persisted in his search about the room until he found them in the dresser drawer. We are not able to differentiate at all between the authorities cited in our original opinion, and are convinced of the admissibility of the proof that he got these rings out of Jack's house in her absence in the daytime on October 16th, and that same forms a proper link in the chain of circumstantial evidence against appellant.

The motion for rehearing is overruled.

*Overruled.*

### CONCURRING OPINION.

MORROW, Presiding Judge.—While not dissenting from the result announced, concurrence in some of the expressions made in the course of the original opinion is withheld. That the general rule of evidence excludes proof against one accused of crime of other offenses committed by him is not open to question. The reasons for the rule have often been stated in the judicial decisions and by text-writers. See Underhill's Crim. Evidence, 3rd Ed., Sec. 150. That to such general rule there are numerous exceptions is established with a certainty equal to that which applies to the rule itself. Underhill's Crim. Evidence, Sec. 151. In the application of the rule general statements often found in the opinions such as that in Frazier's case, 246 S. W. 391, namely, "every circumstance reasonably calculated to illuminate the transaction in question, and to make probable the guilty connection therewith of the accused, should be allowed to go to the jury" must be construed in the light of the evidence in

the particular case and the established rules of evidence limiting and restricting the circumstances under which certain classes of evidence are receivable. A statement by Mr. Bishop in his Criminal Procedure, quoted with approval in the opinion of this court in McKinney v. State, 8 Tex. Cr. App. 640, seems to the writer to come as near comprehending the subject as is possible in a general statement. The language of the opinion follows:

"Mr. Bishop announces the correct doctrine to be, 'that though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet, whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible, and it is also admissible if it really tends thus (as in the facts of most cases it does not) to prove the act itself.' 1 Bishop's Cr. Proc., sec. 1067."

The facts in the case from which the quotation is taken and the ruling of the court thereon seem to illustrate the soundness of the quotation in the same opinion from Greenleaf on Ev., Sec. 53, as follows:

"In some cases, however, evidence has been received of facts which happened before or after the principal transaction, which had no direct or apparent connection with it; and therefore their admission might seem at first view to constitute an exception to this rule (which excludes evidence of collateral facts). But those will be found to have been cases in which the knowledge or intent of the party was a material fact on which the evidence, apparently collateral and foreign to the main subject, had a direct bearing, and was therefore admitted."

The facts in the present case seem to render the evidence of the previous offense admissible though apparently not within the exceptions to the rule excluding proof of other crimes of the most general applications. In giving sanction to the conclusion stated in the original opinion the view is expressed that as a precedent the opinion should not be treated as extending the general rule but rather as an exceptional case restricted by the particular facts upon which the announcement is made.