**Walter KNAPP, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 46226.**

Court of Criminal Appeals of Texas.

July 3, 1973.

Rehearing Denied Jan. 9, 1974.

Second Rehearing Denied Feb. 13, 1974.

**424**

Branch T. Archer, Jr., Wayne Bagley, Frank J. Baughman, Amarillo, L. Wayne Scott, San Antonio (On Appeal Only), for appellant.

Robert O. Smith, Dist. Atty., and Michael J. McCormick, Asst. Dist. Atty., Austin, and Jim D. Vollers, State's Atty., and Robert A. Huttash, Buddy Stevens, Asst. State's Attys., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is felony theft; the punishment, four (4) years.

Appellant's first ground of error is the alleged failure of the State to prove venue in Travis County. Appellant was a member of the House of Representatives. Pursuant to a requisition by appellant, Frederick B. Scott, an employee of the House of Representatives, mailed to appellant at his address in Amarillo $1200 in 6-cent stamps. Upon receipt of such stamps appellant traded them for a pickup truck at the Plains Motor Company in Amarillo. The stamps were the property of the State of Texas and were held by Scott as agent of the House of Representatives. Scott was acting as appellant's agent in mailing the stamps to him. Scott was in no wise connected with the appropriation by appellant of the stamps as set forth above. He was clearly an innocent agent in the transaction.

A very similar fact situation was before this Court in Speer v. State, 123 Tex.Cr.R. 188, 58 S.W.2d 95. There defendant, the Sheriff of Walker County, received from Austin through the mail a warrant from the Comptroller of Public Accounts which he cashed at the Huntsville State Bank and which was in turn paid by the State Treasurer in Austin, Travis County, Texas. It was there insisted that the venue was in Walker County. This Court held in effect that the Comptroller was acting as an innocent agent for appellant and since the funds converted by appellant were the property of the State of Texas and in the custody of the State officials in Austin, Travis County, Texas, that venue properly lay in Travis County. The question of venue was fully discussed in that opinion and is here dispositive of the contention before us. We hold that the trial court did not err in refusing to grant a motion for instructed verdict on the ground that venue had not been proven in Travis County.

Ground of error number two, briefed without citation of authority, relates to the failure of the court to instruct the jury that they must acquit unless the State proved that the stamps were taken and appropriated by appellant in Travis County and to acquit if they found that the taking and appropriation occurred in Potter or Randall Counties.

The court in that portion of the charge which applied the law to the facts required a finding that the appropriation occurred in Travis County. This was proper and sufficient.

Under the record in this case the question of venue was a question of law and not a question of fact to be submitted to the jury.

Ground of error number three is directed to paragraph two of Defendant's

Objections and Exceptions to the Court's Charge, to which the trial court appended the notation "granted—charge re-written to delete proposed paragraph". Nothing is presented for review.

■ Ground of error number four, as we construe it, is an attack upon the sufficiency of the evidence. Appellant claims the court erred in failing to grant an instructed verdict, as requested in his Objections and Exceptions to the Court's Charge, on the ground that the evidence failed to show a false pretext made by appellant or relied upon by anyone.

As we view this record the facts showed a violation of the second mode denounced by Article 1413, Vernon's Ann.P.C., and it was so submitted to the jury. Under such a prosecution there is no reliance upon false pretext and none need be proven. Finley v. State, Tex.Cr.App., 440 S.W.2d 849, and cases there cited.

■ Grounds of error five, six, seven and eight relate to the admissibility of State's Exhibits 1a, 1b, 1c and 1d, which were requisitions for stamps issued to appellant before and after the stamps directly involved in this prosecution but during the same calendar year. It is appellant's theory that these constituted proof of extraneous transactions. We disagree and conclude the exhibits were admissible.

House Simple Resolution No. 41 would have authorized appellant to draw $10,500 [1] actual and necessary expenses. So then, *no* requests for withdrawals from such fund were illegal *unless* it was shown that appellant exceeded this sum or that some withdrawal was appropriated to appellant's own use and not applied to the actual and necessary expenses of his office.

Appellant's brief recognized this reasoning when it is said:

"In the instant case the request for stamps was lawful by virtue of House Simple Resolution No. 41."

This being so there was no error to show that appellant drew the sum of $10,500 or any part thereof.

Further, part of the State's case was proof that even though appellant had drawn $8,500 in stamps during the year, he had requisitioned only 6,000 envelopes. The stamps which he had drawn were sufficient to mail over 140,000 pieces of mail. This discrepancy was valid proof that the stamps were not drawn for a legitimate purpose and was the reason assigned by the trial court for admitting the evidence as to the stamps requisitioned by appellant both prior to and after May 28.

■ Ground of error number nine is, as we construe it, another attempt to attack the sufficiency of the evidence to support the conviction because it was a request to instruct the jury that they must believe beyond a reasonable doubt that the postage stamps issued to appellant on May 25 were the stamps used to purchase the pickup truck in Amarillo.

This is predicated upon the testimony of the witness Roberts, the salesman who dealt with appellant at the truck dealership. Roberts stated that he received the stamps in payment for the pickup on May 25 which was the same day the witness Scott testified he mailed the same to appellant from Austin.

This was an attempt to secure a verdict from the jury based upon the witness Roberts' testimony alone, disregarding that of the witness Gilliland [2], Roberts' boss, and

1. The sum is variously referred to as $10,400 and $10,500.

2. [Direct Examination by Mr. Smith] "A. [Bill Gilliland] Our records reflected that the transaction was consummated on the 28th of May, which was the day that we actually received the credit on our postage meter from the Post Office, and it was also the day that the sale contract was processed through our books."

the witness Lanford[3], an employee of the Amarillo Post Office. These last two witnesses testified, in effect, that the final trade for the pickup was consummated on May 28, 1970, and that the stamps were turned in to the post office on May 28, 1970. Further contradictory evidence was shown by a notation on the work sheet of the motor company, not in Roberts' handwriting, showing that the motor company received credit for the stamps on May 28.

All the evidence, as we view it, in this case is consistent and develops logically, except for Roberts' testimony, that the stamps were delivered on the 25th. The record reflects that the stamps were mailed from Austin on the 25th, were received in Amarillo on the 27th and 28th, and that the trade for the pickup was consummated on the 28th. While none of the other witnesses testified specifically as to when the stamps were actually delivered to the motor company, it would logically follow that they were not delivered until after they arrived in Amarillo.

As we view it, the evidence is sufficient for the jury to disregard Roberts' testimony concerning the date the stamps were delivered to him and rely upon that of the other witnesses.

In Hill v. State, Tex.Cr.App., 456 S.W. 2d 699, we said:

"The jury is the judge of the facts, the credibility of the witnesses and the weight to be given to their testimony. The jury may accept or reject any portion of the testimony, *even that of one witness*." [Emphasis Supplied]

Grounds of error ten and eleven are restatements of the last ground of error and will not be further discussed.

Ground of error number twelve complains of the refusal of the trial court to instruct the jury that the burden was upon the State to prove appellant came into possession of State's Exhibits 1a, 1b, 1c and 1d, with the fraudulent intent to appropriate the same and that he did so appropriate them.

This, of course, is predicated upon the assumption that each of them represented an extraneous offense and that the burden was upon the State to prove that each constituted a consummated transaction. What we have heretofore said concerning extraneous offenses disposes of this contention.

■ Ground of error number thirteen is directed to the failure of the court to instruct the jury that no person could be convicted of theft of his own property. By such contention, if we properly understand appellant, he argues that House Simple Resolution No. 41 conveyed title to the $10,500 which he might draw in contingent expenses to him or created a fact issue as to ownership in such funds. This was not a jury question but a question of law. We do not so construe the Resolution.

■ Ground of error number fourteen relates to the failure of the court to instruct the jury that appellant must have had fraudulent intent to appropriate the property at the time he received the same. As we construe the court's charge and especially Paragraph IV thereof, the jury was fully instructed on the question of fraudulent intent.

■ Ground of error number fifteen, another attack upon the sufficiency of the evidence, contends that, by introducing House Simple Resolution No. 41, the State raised the issue of reimbursement and that it became incumbent upon the State to negative such issue by offering proof that the property was not issued to him in the form of a reimbursement.

3. The witness Lanford testified:
"A. It shows that I set twelve hundred and thirty dollars in Plains Chevrolet postage meter.

"Q. And on what day?
"A. On May 28, 1970."

As we have construed such Resolution, no issue of reimbursement was raised and, therefore, the court did not err in failing to instruct the jury on such issue.

Ground of error number sixteen relates to the failure of the court to respond to Paragraph 26 of Appellant's Objections and Exceptions to the Court's Charge. We quote such paragraph:

"Defendant's objection excepts to the Court's Charge for the reason that Paragraph IV thereof contains statements that constitute a comment by the Court upon the evidence in this case."

This was clearly insufficient objection to call to the court's attention the objection appellant seeks to now present to this Court. By his brief in this Court appellant contends that the court commented upon the weight of the evidence by assuming that the title to the stamps was in the State of Texas while the evidence might be construed as establishing title in the House of Representatives instead of the State of Texas. Such a contention was not called to the trial court's attention by the objections made at the time of trial and nothing is presented for review.

Grounds of error seventeen and twenty complain of giving of Paragraph III of the court's charge which reads as follows:

"You are further charged as the law in this case that the State is not bound to prove the exact date alleged in the indictment but may prove the offense, if any, to have been committed at any time prior to the filing of the indictment so long as said offense, if any, occurred within five years of the date of the filing of said indictment."

The charge as given is substantially the same as appears in Willson's Criminal Forms 7th Edition, Section 3598, and was a necessary charge for the guidance of the jury under the facts of this case and a correct statement of the law under Article 12.03, Vernon's Ann.C.C.P.

Ground of error number eighteen complains of the giving of the charge on circumstantial evidence in that appellant alleges it singled out a particular fact. The charge as given is substantially the same as appears in Willson's Criminal Forms 7th Edition, Section 3572, except that in the third paragraph thereof the name of appellant appears after the word "accused" and the phrase "the defendant committed the offense" appears instead of "the defendant's guilt".

The charge as given does not isolate essential elements and tell the jury the type of evidence which supports the same as did the charge in Montgomery v. State, 157 Tex.Cr.R. 44, 246 S.W.2d 209, upon which appellant relies. In that case the court's charge instructed the jury as follows:

"In this case, the State relies upon circumstantial evidence to prove that the check in question was a forged check * * * ."

Ground of error number nineteen complains that the court's charge did not instruct the jury to acquit if they found appellant to be the bailee of the property alleged in the indictment.

This is not a jury question, but a question of law to be decided from the terms of House Simple Resolution No. 41. As we view the Resolution, it does not make appellant a bailee.

Appellant's last ground of error grows out of the cross-examination of appellant's character witness Miller, who was asked a "have you heard" question. The witness had been questioned concerning appellant's prior marriage and children born to that union. He was then asked if he had *heard* about a "plan" appellant had to kidnap such children from his former wife in defiance of a court order. We perceive no reversible error. The witness testified

as to appellant's good character and it was, therefore, permissible, in the absence of showing of bad faith, to ask him if he had *heard* about acts or reports which would be inconsistent with a good reputation. See Brown v. State, Tex.Cr.App., 477 S.W.2d 617; and Hart v. State, Tex.Cr.App., 447 S.W.2d 944.

Finding no reversible error, the judgment is affirmed.

ODOM, Judge (concurring).

I concur in the result reached by the majority. However, I must explain my reason for concurring on the last ground of error.

The question was propounded to reputation witness Miller, on cross-examination at the punishment stage of the trial, as follows:

"In that connection, Mr. Miller, I will ask you if you have ever heard discussed any plan that he (appellant) had to kidnap those children from his former wife in defiance of a court order?"

Such question is improper [1] but seems to be harmless error under the particular facts of this case since appellant had applied for probation,[2] and the following was brought out on direct examination: (1) The witness testified that he knew appellant's reputation and was personally well acquainted with him; (2) that they were of the same profession; (3) that they had worked together as Assistant District Attorneys for Potter and Armstrong Counties; (4) that they served together on the Board of Directors of a bank; (5) that they were in the same business club; (6) that they had worked together "in Boy Scout work and in Bar work, Junior Bar and Senior Bar work, and then in Amarillo Jaycees"; (7) that he had discussed appellant's reputation with many people, including two district judges in Amarillo, and with numerous lawyers; (8) that he had visited in the appellant's home; (9) and, that he knew the appellant's family.

In light of the development in the record of this close personal relationship between the witness and the appellant, including the fact that the witness knew appellant "during the time his divorce was taking place," I conclude that the error was harmless.

ROBERTS, Judge (dissenting).

I respectfully dissent. The probative evidence in this cause is as follows:

Joyce Taylor, custodian of the records of the Texas House of Representatives, testified and identified State's Exhibit # 1, showing a request from appellant for $1,200.00 worth of postage stamps. The request was received in the House on May 25, 1970, at which time appellant was a member of the Texas House of Representatives.[1]

Frederick Scott testified that on May 25, 1970, he was Postmaster and property manager of the Texas House of Representatives. He stated that on that date packages containing $1,200.00 worth of stamps were mailed to appellant. The packages were placed in the mail on the afternoon of May 25, 1970, and were mailed 3rd class postage.

C. T. Davis, Postmaster of Amarillo, identified State's exhibits which showed

---

1. See, e. g., Jones v. State, Tex.Cr.App., 479 S.W.2d 307; Webber v. State, Tex.Cr.App., 472 S.W.2d 136.

2. Cf. McCrea v. State, Tex.Cr.App., 494 S.W. 2d 821 (1973); Walker v. State, Tex.Cr.App., 493 S.W.2d 239 (1973).

1. House Simple Resolution Number 41 was introduced, showing the authorization to expend funds previously appropriated by the House, such funds to be spent to pay for the actual and necessary expenses incurred by the members of the House of Representatives, up to eight hundred and seventy-five dollars per month; a provision was included so that amounts not used in a single month could be carried forward for future use, so long as the amount used did not exceed the monthly allowable times the number of months of the interim.

that the packages mailed to appellant were picked up on May 27 and May 28, 1970, by Nancy Cox.

Mrs. Cox, who at that time worked for appellant, testified that on May 27 and May 28, 1970, she signed for these packages.

The State's next witness was Ronnie Roberts, a salesman for Plains Chevrolet in Amarillo. He stated that on May 25, 1970, he had occasion to meet appellant; appellant approached him at the Chevrolet company and stated that he would like to buy a used pickup. Roberts testified that he eventually completed a transaction with appellant and filled out a sales sheet. Roberts stated that "sometime during the date of the fifth and twenty-fifth, 1970, Mr. Knapp did say that he wanted to purchase this vehicle, and he wanted to know if we could take a trade of stamps for the vehicle, and I told him that I would have to take this to a superior, but would he bring the stamps and that we would see if we could get the deal okayed."

The remainder of Roberts' testimony is crucial and we quote from the record: (Questioning by Mr. Smith, the prosecutor)

"Now, I can truthfully not say whether the man had the stamps with him at this time, or whether he left the dealership and brought the stamps back.

"Q Can you say for certain whether it was Monday, Tuesday, Wednesday or Thursday?

"A No, sir, I cannot. The only record I have of the deal is on the 5th and 25th, 1970. I have no personal data reflecting the date in any other way.

"Q Well, anyway, did he eventually bring you some stamps?

"A Yes, sir, he did bring the stamps out, and if my memory is correct, he brought the stamps out in a ci-

gar box. To what denomination these stamps were, I don't remember, but I do know that they were just rolls of stamps, and Mr. Knapp and I went to either the Assistant Truck Manager or the Truck Manager. I do not remember which of these men actually took the stamps.

"All I know is that Mr. Knapp was given the vehicle and he was told at that time that if the Post Office would take these stamps, that we could change them into either the postage machine, which we do use, or cash, that we would make the trade, and it was kind of a credit pending thing."

On cross-examination, Roberts stated:

"Q You are holding there in your hand —actually, that is a copy of what you referred to as a deal sheet?

"A Yes, sir.

"Q It has a date at the top righthand corner of 5–25–70?

"A Yes, that is correct.

"Q And it has a date at the bottom righthand corner of 5–25–70?

"A Yes, that is correct.

"Q Can you tell the jury what day that deal sheet was filled out?

"A 5–25–70."

* * * (Cross-Examination continued)

"Q Can you tell the Jury what day Mr. Knapp brought you those postage stamps?

"A The only record I have, sir, is the 5th—25th, 1970.

"Q And that is it? As far as you recall, that is the only day that you had any dealings, at all, with Walter Knapp. Is that correct?

"A That is true, yes, sir."

* * * (Cross-Examination continued)

"Q About what time of the day, if you will tell this Jury, that Mr. Knapp brought these stamps to you there in Randall County, Texas at the Chevrolet Truck Sales?

"A Mr. Bagley, I really can't recall the exact time that Mr. Knapp brought the stamps, but I think, to the best of my knowledge, it was after twelve noon of the 5th and 25th, 1970."

On re-direct, Roberts stated:

"Q But are you testifying under oath that it was Monday, the 25th?

"A No, sir, I am not. I am saying that whatever day the fifth and the twenty-fifth of 1970 was, this was when the transaction took place.

"Q Insofar as your records are concerned?

"A Yes, sir, and I am strictly going by record.

"Q Could it have been Wednesday or Thursday rather than Monday?

"MR. ARCHER [Defense Counsel]: Your Honor, we object to that. This is the State's own witness, and we object to any attempt to lead him or pose an argumentary type—

"THE COURT: Objection overruled.

"MR. ARCHER: Note our exception.[2]

"Q (By Mr. Smith) [Prosecutor] The question was can you tell this Jury under oath precisely what day of the week it was?

"MR. ARCHER: Your Honor, we object to that as being repetitious.

"THE COURT: Objection overruled.

"MR. ARCHER: Note our exception.

"A The only thing I can tell the people on the Jury is that from my records, which I am holding in my —a copy in my hand, this deal took place on the 5th and 25th of 1970. The only record—or the only thing that I have seen was a calendar that did say that the 5th and 25th of 1970 was on a Monday, and I do not have any other record to my knowledge that I could tell you differently."

The examination of the witness continued:

"*Questions by Mr. Bagley* [Defense Counsel]:

"Q Regardless of what day of the week the 25th of May of 1970 was, that was the only day you saw Walter Knapp, and that was the day he brought the stamps to you. Isn't that correct?

"A Yes, sir, this is correct.

"MR. BAGLEY: I have nothing further, Your Honor.

REDIRECT EXAMINATION

"*Questions by Mr. Smith* [Prosecutor]:

"Q Now, Mr. Roberts, are you sure this was the only time you saw him?

\* \* \* \* \* \*

"A Yes, sir, I am sure. I knew who Mr. Knapp was from the publicity of his different offices that he had held, and I had been living in Amarillo about a year when this transaction was made. I knew who Mr. Knapp was, but I was not a personal friend, and to the best of my knowledge, this was the only time that I have ever seen Mr. Knapp in the Plains Chevrolet

---

2. See Wall v. State, 417 S.W.2d 59 (Tex.Cr.App.1967).

Dealership; or around on this date was the only time.

"Q But you saw him more than one time in relation with the deal with the truck? Haven't you testified to that?

"A I saw him more than one time on this day, but I truthfully can only say that this day was—if this 5th and 25th is correct, then this is the only time that I saw Mr. Knapp."

Bill Gilliland, the general manager of Plains Chevrolet in Amarillo, testified that his records reflected that the transaction with appellant was *consummated* on *May 28, 1970,* the day when his company actually received the credit on their postage meter. He later clarified this statement by stating that finalization of the deal was made on the day that the stamps were taken to the post office. He further testified that he had never spoken to appellant in his life and he could not tell when the stamps actually came into the possession of the dealership, only that the dealership received credit for them on May 28, 1970.[3]

Charles Conley, an employee of Plains Chevrolet, testified and stated that he was given some stamps and asked to take them down to the post office to see if he could exchange them for money. He stated that he was unable to make such arrangements, but he was able to get credit for the stamps on the automobile company's postage metering machine. The only date specified by Conley was "May of 1970."

Charlie Lanford, an Amarillo postal employee, testified that on May 28, 1970, he gave credit to Plains Chevrolet's postage meter in the amount of $1,230.00, in exchange for postage stamps.

At this point, the State introduced exhibits showing that appellant requested 6000 envelopes during the 1970 legislative session.

The State was then allowed to introduce four exhibits which were records showing requests from appellant for stamps from the House of Representative Contingent Expense Office. These exhibits indicate that appellant requested the following amounts of stamps: On January 16, 1970, $600.00; on August 14, 1970, $900.00; on December 10, 1970, $3000.00; and on December 16, 1970, $3000.00.

Appellant vigorously argues that the court committed error in allowing the introduction of these exhibits. Appellant contends that they were irrelevant and could only serve to prejudice the jury against him. I agree that error was committed in allowing the entirety of this evidence to be introduced.

The record reflects that when the exhibits were first presented to the court, at a very early stage of the proceedings, defense counsel objected to all exhibits showing appellant's stamp requests except the May 25, 1970, request for $1,200.00 worth of stamps.

The State countered:

"MR. SMITH: Your Honor, we think that the objection is well taken, in part, and we would restrict our offer as to the items dated January 16, 1970 and May 25, 1970.

"Certainly the stamps drawn prior to the date alleged in the indictment would be relevant, and I think we can connect up at least part of those stamps with the transaction.

"*Certainly, we couldn't connect up stamps that he drew subsequent to the transaction, and we concede that that is a proper objection, so we restrict our of-*

---

3. The sales sheet, dated 5–25–70, reflects the following notation:

"$1230 - Stamps -
 65.50 - Cash
 ————————
 $1292.50 Pd 5/28"

The salesman Roberts testified that though he filled out the sales sheet, he did not write the above information.

*fer to the first two items, and with the consent of the defense counsel, we will so alter our exhibit.* (emphasis supplied)

"THE COURT: Do you have any objection, then, to the two?

"MR. ARCHER: Yes, sir.

"THE COURT: At this time, Mr. Smith, I am going to sustain the objection, realizing full well that the one prior to May 25th may become relevant by the development of the testimony, but at this time, with this first witness, I am just going to sustain the objection, and allow just the May 25th into evidence, and this does not preclude, if you feel it is relevant at a later date, it will be submitted."

Shortly thereafter, on cross-examination, defense counsel questioned Mrs. Taylor, the custodian of the records of the House, as to whether or not she could discern whether State's exhibit #1 (the request of May 25, 1970, for $1,200.00 worth of stamps) might actually reflect a reimbursement. She stated that she did not know. At this point, the State again moved to introduce the other four stamp request exhibits. The trial judge allowed into evidence the $600.00 request of January 16, 1970, the only one of the four exhibits which predated the alleged offense of May 25, 1970.

Near the close of the trial, the State introduced the previously mentioned exhibits showing appellant's requests for 6000 envelopes during 1970. The prosecutor defended such evidence, stating:

"Your Honor, we think they are admissible because on the face of the tickets, they show the procurement of envelopes, and certainly there is nothing sinister or inflammatory about the procurement of envelopes, but when the envelope

quantity is matched with the stamp quantity requisition during same period, it shows such a discrepancy that we think it is a circumstance which tends to show misappropriation of the stamps."

The judge admitted the evidence, and, *in the absence of any request by the State,* reversed his previous ruling and allowed the remaining three stamp requests to be admitted. Appellant called upon the State and the court to explain the reason why these exhibits, previously ruled inadmissible, were now being allowed into evidence. The prosecutor stated:

"We feel they are admissible in that they come within the Statute of Limitations that are the subject matter of the indictment. They come within the Statute of Limitations; they are anterior to the presentment of the indictment in Court, and under Section 4.59 of the Blanch (sic) Annotated Penal Code, they are admissible."[4]

The trial judge agreed, stating:

". . . the ruling of the Court will be that since this is a theft indictment, that any evidence which is material and relevant within the Statute of Limitations, which is anterior to the presentment of the indictment, will be admissible, and I will at this time rule that exhibits 1b, c and d are admissible."

Appellant timely objected to this ruling. I have carefully examined the authorities cited us by the State. Branch's Annotated Penal Code, Sec. 459, states:

"The State is not bound by the date alleged and may prove that the offense was committed before, on, or after the date alleged, if the date proven be a date anterior to the presentment of the indictment or information and not so remote as to be barred by limitation."

4. The State never contended that the exhibits were admissible under the theory of extraneous offenses. It is axiomatic that no evidence of extraneous offenses should be offered unless the State is prepared to prove that the accused committed them. Tomlinson v. State, 422 S. W.2d 474 (Tex.Cr.App.1967).

I adhere to this theory completely. For example, in Neal v. State, 374 S.W.2d 668 (Tex.Crim.App.1964), the indictment alleged June 16, 1962, as the date of the offense. Evidence reflected that the murder was committed on June 20, 1962. This Court held that no fatal variance existed and the judgment was affirmed.[5]

In the present case, the State's entire case was based upon the theory that the alleged offense took place in May, 1970, when appellant allegedly misappropriated $1,200.00 worth of stamps to purchase a used pickup.[6] In its brief, the State argues that those other requests for stamps were "corpus delicti" of the offense. We are referred to McClelland v. State, 390 S.W. 2d 777 (Tex.Cr.App.1965) cert. denied, 382 U.S. 928, 86 S.Ct. 307, 15 L.Ed.2d 340 (1965). This was a bribery case wherein the State showed numerous transactions from December 2, 1960, through May, 1962. The indictment alleged that the offense occurred on December 2, 1960. This Court admitted evidence of these other transactions, stating:

"We are not here dealing with extraneous offenses, but we are dealing with *one offense* involving many transactions." (Emphasis supplied)

It is conceivable that, under such a theory, the January 16, 1970, request of $600.00 worth of stamps might have properly been admitted had it been sufficiently connected up with the offense alleged.[7] However, it is beyond my comprehension as to how the post-May, 1970, requests could serve as "corpus delicti" of the offense. As noted, the State concedes that their theory is that appellant misappropriated $1,200.00 worth

of stamps in May, 1970, in purchasing a used pickup. All evidence showed that the transaction was completed by May 28, 1970. Under the McClelland rule, supra, the "one offense" was completed at this point. The showing of the post-transaction stamp requests was error and could only serve to prejudice the jury against appellant. The accused in a criminal case can be convicted, if at all, only by evidence that shows that he is guilty of the offense charged. Newman v. State, 485 S.W.2d 576 (Tex.Cr.App.1972); 2 C. McCormick & R. Ray, Texas Evidence, § 1521 (2d ed. 1956); see Perez v. State, 165 Tex.Cr.R. 639, 310 S.W.2d 334 (1958). Further, as the State concedes, the requests were not admissible as extraneous offenses; i.e., no "offenses" were shown, merely requests for stamps from a member of the Texas House of Representatives.

The State cites a long line of authorities, urging that it was incumbent on the appellant, if he wanted the court to limit the jury's consideration of the various transactions, to request the court to have the State *elect* as to which of the group of stamps it would rely upon for conviction. The authorities which the State refers us to, including Bradshaw v. State, 32 Tex. Cr.R. 381, 23 S.W. 892 (1893); Walker v. State, 72 S.W. 401 (Tex.Cr.App.1903); Stringer v. State, 110 Tex.Cr.R. 641, 10 S. W.2d 721 (1928); and Sheppard v. State, 154 Tex.Cr.R. 608, 229 S.W.2d 630 (1950), stand for the proposition that, where more than one offense on which conviction might be predicated has been *proven* by the State, the accused is entitled to an election by the State when it is requested. I do not take issue with this principle of law.

---

5. Section 459 of Branch's Ann.P.C. does *not* mean that the State may prove "some" offense, which is not alleged in the indictment, or an offense "similar" to that alleged in the indictment, so long as it is within the statute of limitations and is a date anterior to the indictment.

6. The State concedes in its brief: "It was the theory of the State that the appellant appropriated twelve hundred dollars worth of

State stamps to his own use by purchasing a pickup truck with them."

7. The State never produced evidence that appellant *received* the stamps made in these four requests or that such requests were illegal; nor was there any showing as to how the stamps were appropriated, or misappropriated. The State apparently relied solely upon evidence of the $1,200.00 request for stamps on May 25, 1970.

Rather, I conclude that it has absolutely no application to the present cause. No more than one, if any, offense was proven by the State. Cf. Shaw v. State, 479 S.W.2d 918 (Tex.Cr.App.1971). Further, the present conviction could not possibly have been predicated upon any one of the extraneous stamp requests shown.[8]

The only remaining consideration, therefore, is whether or not the conviction can be supported by the May 25, 1970, request for $1,200.00 worth of stamps. The appellant and State agree that on May 25, 1970, $1,200.00 worth of stamps was mailed from Austin and sent to appellant in Amarillo. The stamps were picked up at the post office by appellant's secretary on May 27 and May 28, 1970. The transaction with Plains Chevrolet was "finalized" on May 28, when the Chevrolet company received credit on their postage meter machine.

The only person who testified as to any direct dealings with appellant was Ronnie Roberts. He stated that on May 25, 1970, he did see appellant more than one time that day, but that was the only day he ever dealt with appellant. Roberts testified that appellant brought the stamps to him in a cigar box, and Roberts subsequently turned the stamps over to a supervisor. No other evidence established a specific date as to when the $1,200.00 worth of stamps was received at the automobile dealership. Appellant did not testify.

The jury was charged on the law of circumstantial evidence. The charge recites that:

" . . . in order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by the evidence beyond a reasonable doubt; all the facts, that is, the facts necessary to the conclusion, must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, Walter Knapp, and no other person, committed the offense charged.

[The circumstances] must exclude to a moral certainty every other reasonable hypothesis except that the defendant committed the offense . . . "[9]

If any testimony had been presented which in any way might have contradicted Roberts' testimony that the stamps were received by Plains Chevrolet on May 25, 1970, then, conceivably, the jury could have resolved the conflict and chosen to accept or reject any part or all of the testimony of any witness. Edmiston v. State, 489 S.W.2d 903 (Tex.Cr.App.1973); Angle v. State, 486 S.W.2d 308 (Tex.Cr.App. 1972). For example, if evidence had been presented that the $1,200.00 worth of stamps arrived in Amarillo on May 27 and 28 and, on the 28th or 29th, were taken to Plains Chevrolet and traded for the pickup, then the jury would at least have had a circumstantial basis for finding the appellant guilty of the offense charged in the indictment.

However, in fact, the jury had before it only evidence that the stamps were delivered to Plains Chevrolet on May 25, 1970, the same day the $1,200.00 worth of stamps was mailed from Austin. The State, by its own uncontradicted evidence, thus proved the impossibility of the offense alleged.

8. As earlier stated, the State's entire basis of prosecution was based on the theory that in May of 1970 appellant misappropriated $1,200.00 worth of postage stamps and purchased a used pickup. The only extraneous request which pre-dated the alleged offense was in January of 1970, when $600.00 worth of stamps was requested. Further, any one of the post-offense requests obviously could not support a conviction in this cause. See also, n. 4, supra.

9. Appellant also challenges the correctness of this charge. I am not here addressing that issue.

The unmistakable impression left by reading the record in the present case is that sometime, somewhere, appellant misappropriated State postage stamps and is perhaps guilty of "something."[10] Fortunately, our system of criminal justice demands a higher standard than that, but unfortunately the majority is adopting the lower standard of "he must be guilty of something, so we will affirm." The State undertook to prove that in May of 1970 appellant misappropriated $1,200.00 worth of postage stamps and purchased a used pickup. The State failed to sustain its burden of proof in this cause. Appellant's motion for an instructed verdict should have been granted, as the evidence is insufficient to support the conviction.

Further, I reiterate my conclusion that it was reversible error to admit the post-May, 1970, requests for stamps. This error was compounded by the State's argument. See n. 10, supra.

For these reasons, I would reverse the judgment and remand the cause.

ONION, P. J., joins in this dissent.

## OPINION

## ON APPELLANT'S MOTION FOR RE-HEARING

ODOM, Judge.

In his motion for rehearing appellant has asserted five "points of error" which read as follows:

1. "The majority opinion of this Honorable Court does not correctly state the facts of this case and relies upon assumed facts not in evidence before the jury to affirm the conviction in this case. This Honorable Court, by assuming that the naked offer of State's Exhibits 1a, 1b, 1c and 1d into evidence, without other proof offered in support thereof connecting Appellant with the stamps reflected in these exhibits, constituted *proof* that '. . . Appellant had drawn $8,500 in stamps . . .' and was also *proof* that '. . . the stamps were not drawn for a legitimate purpose . . . .' has denied Appellant's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States."

2. "This Honorable Court erred in holding that there was sufficient evidence that the stamps traded by Appellant for a pickup were property of the State."

3. "The majority opinion has reached contradictory conclusions regarding the admissibility of State's Exhibits 1a, 1b, 1c and 1d, thereby creating a confusion in the law which should be clarified by a rehearing of this cause."

4. "This Honorable Court erred in refusing to reverse this case because of the erroneous question propounded to the witness Miller."

5. "The majority opinion of the Court has not properly applied House Simple Resolution No. 41, and has interpreted

10. In argument, the prosecutor stated:
"Now Mr. Knapp was grabbing his any way he could, and I think you believe that because the same month that he went out of office, he got six thousand more dollars worth of your money in stamps, because that was the only thing he could grab as he was leaving.

"Over a twelve month period, he took out of this Contingency Fund eighty-seven hundred dollars worth of six cent stamps. That is one hundred and forty-five thousand pieces of mail; one hundred and forty-five thousand pieces of mail. During the same period, he got six thousand envelopes.

\* \* \* \* \*

"That comes, of course, to eleven thousand one hundred dollars, which is more than the ten thousand four hundred dollars they allowed him, but he wasn't using any of that for business. He was grabbing those stamps because they are negotiable. He found they were negotiable at the Plains Chevrolet Company when he bought the pickup, so in August, he goes back and gets nine hundred dollars more stamps, and in December, he gets six thousand dollars more the month he goes out of office. Reasonable doubt?"

House Simple Resolution No. 41 contrary to the law."

At the risk of being redundant, but in an effort to answer the appellant's argument on the sufficiency of the evidence, some of the facts will be stated.

The indictment alleges that appellant stole United States Postage Stamps of the value of $1200.00 from the State of Texas with the intent to deprive the State of the value thereof, and appropriated them to his own use and benefit. Proof of the theft of such stamps of a value of over $50.00 would sustain that allegation.

The evidence showed that pursuant to a requisition $1200.00 worth of United States Postage Stamps were mailed from Austin to appellant's Amarillo office on May 25, 1970, and that they were received by appellant's secretary and placed on his desk in Amarillo on May 27 and 28, 1970. On May 28 the Plains Motor Company in Amarillo was given credit for $1230 worth of postage stamps by the post office in Amarillo, and consummated the sale of the pickup truck to appellant, for which he paid in part with $1230 worth of postage stamps.

Appellant argues that since the stamps were mailed from Austin on the afternoon of May 25, 1970, they could not have been used in the purchase of the pickup truck. Although the sales order for the truck was dated May 25 and the salesman who made the sale testified that he received some stamps in payment for the truck on that day, we note that the salesman's testimony as to the date was not conclusive; that he did not testify as to the value of the stamps delivered, whatever the date; and that he did testify that he only saw the stamps appellant had with him, but that they never were delivered to him. The jury was authorized under the evidence and testimony which has been quoted in the majority and dissenting opinions to believe that the salesman was mistaken about the date given in his testimony and to resolve conflicts in the testimony against appellant.

■■■ We are convinced the circumstantial evidence is sufficient to support the jury's implied finding that the stamps traded for the pickup were those acquired from the State of Texas, and accordingly overrule appellant's ground number two.

Appellant's first and third "points" request clarification of the holding on original submission of two matters which he contends may be subject to misinterpretation.

First, appellant disputes the holding of this court that the discrepancy between the stamps requisitioned and envelopes requisitioned during the year was valid proof that stamps were not drawn for a legitimate purpose.

Appellant has misconstrued the holding of this court in speculating that the majority assumed the discrepancy constituted conclusive proof in and of itself that the stamps were mailed from Austin, that they were received by appellant in Amarillo, and that they were proof "of anything the jury might infer from the exhibit."

■■■ The misconstrued language of the court was directed to the issue of the *admissibility* of the challenged exhibits, not to any question of their *sufficiency,* standing alone, to support the verdict. This court's language that the discrepancy was valid proof [1] was a statement on the *validity,* not conclusiveness, of the discrepancy as a circumstance relevant on the issue of whether the stamps drawn on May 25 were drawn for a legitimate purpose. As this

---

[1]. "Proof in a strictly accurate and technical sense is the result or effect of evidence, while evidence is the medium or means by which a fact is proved or disproved, but the words 'proof' and 'evidence' may be used interchangeably," Black's Law Dictionary, 4th Rev.Ed. 1380. Technically, the discrepancy was proof; the quantity of envelopes and stamps requisitioned was the evidence by which the discrepancy was proven.

court held in Haley v. State, 84 Tex.Cr.R. 629, 209 S.W. 675 (1919):

"In a case depending upon circumstantial evidence it is necessary only to render it admissible that it tends to prove the issue, or constitutes a link in the chain of proof, and it is not to be rejected, though standing alone it might not justify a verdict."

See also Powell v. State, 134 Tex.Cr.R. 244, 114 S.W.2d 894; Ethridge v. State, 133 Tex.Cr.R. 287, 110 S.W.2d 576. Where the state relies entirely upon circumstantial evidence, the rules of admissibility are not as stringent as otherwise. See, e. g., Burns v. State, 124 Tex.Cr.R. 131, 60 S.W.2d 793.

■ Appellant complains that it was not shown that he received the requested stamps in the amount shown by the exhibits. Although evidence of such receipt would have strengthened the state's case by showing stronger circumstantial evidence of intent, it was unnecessary as a predicate to the introduction of such exhibits.

Appellant also contends that the majority opinion on original submission reached contradictory conclusions regarding the admissibility of State's Exhibits 1a, 1b, 1c, and 1d. Specifically, appellant feels the following two portions of the opinion on original submission are contradictory:

"So then, *no* requests for withdrawals from such fund were illegal *unless* it was shown that appellant exceeded this sum or that some withdrawal was appropriated to appellant's own use and not applied to the actual and necessary expenses of his office."

And:

"This discrepancy was valid proof that the stamps were not drawn for a legitimate purpose and was the reason as-

signed by the trial court for admitting the evidence as to the stamps requisitioned by appellant both prior to and after May 28."

Appellant contends the second excerpt is a holding by this court that the challenged exhibits were admissible as proof of extraneous offenses. To the contrary, as stated above, we held the challenged exhibits were admissible and were admitted because in conjunction with State's Exhibit 12 (showing the requisition of 6,000 envelopes) they showed a discrepancy which constituted circumstantial evidence on the issue of intent, an element of the *charged* offense.

■ The prosecution was based upon the theory that, although the stamps were obtained with consent, appellant obtained them with the intent to deprive the State of Texas of their value and appropriate them for his own use and benefit. Thus, the prosecution rested upon the second mode of theft as defined in Article 1413, V.A.P.C., which provides:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, *or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete.*" (Emphasis supplied.)

Intent therefore was clearly an issue in this case and the challenged exhibits, being relevant thereto, were admissible.[2] See Windham v. State, 169 Tex.Cr.R. 451, 335 S.W.2d 219; Davenport v. State, 127 Tex. Cr.R. 552, 78 S.W.2d 605. These exhibits did not show an extraneous offense and no

---

2. It being the case that appellant, as a member of the Texas Legislature, was authorized to requisition stamps for official use in the execution of the duties of his office, the mere taking, in such a situation, is not itself evidence of unlawful intent. Here, however, more was shown.

jury instruction concerning an extraneous offense was necessary.

 Furthermore, having found the challenged exhibits admissible and admitted to prove an element of the charged offense, even if they also constituted evidence of an extraneous offense, such fact would not negate their admissibility as relevant circumstantial evidence in the instant case. As this court held in Sanders v. State, Tex.Cr.App., 449 S.W.2d 262:

> "The fact that material evidence shows the commission of a separate offense will not suffice to reject it."

See also: Meredith v. State, 115 Tex.Cr.R. 447, 27 S.W.2d 222; Wiggins v. State, 109 Tex.Cr.R. 195, 3 S.W.2d 811; Adams v. State, 95 Tex.Cr.R. 226, 252 S.W. 797.

Finally, appellant complains of our interpretation of House Resolution No. 41 and of our holding on the question propounded to the witness Miller. These contentions are without merit and we deem discussion beyond that in our opinion on original submission to be unnecessary.

Appellant's motion for rehearing is overruled.

## ON APPELLANT'S MOTION FOR REHEARING

ROBERTS, Judge (dissenting).

By the use of suspicion, speculation, and conjectures, the majority affirm their original opinion, when in truth and in fact the evidence is totally insufficient to uphold the verdict of the jury. The appellant, presumably because he was a public official, is now denied due process in this day and age when the whole governmental process both in this State and on the national scene, is under attack. This case has witnessed the trial court and now an appellate court refuse to abide by a fundamental principle of law—that all persons indicted for criminal offenses are presumed to be innocent until their guilt is established by competent evidence beyond a reasonable doubt. "It appears at the present time, at least, that when a public official has been accused of misconduct, he is expected to deny it or credence will be given to the charge." Fowler v. State, Tex.Cr.App., 500 S.W.2d 643 (1973), dissenting opinion by Judge Douglas.

I am aware that at the time a case reaches this Court there has been a finding of guilt and the presumption of innocence no longer prevails; it then becomes incumbent upon the accused to establish that the evidence is insufficient or that reversible error denied him a fair and just trial. This appellant has shown both—the evidence is insufficient and error was committed in the admission of the subsequent stamp requests. The opinion on rehearing seeks to justify the sufficiency on the grounds that there is a technical distinction, when the clear, cold record proves not the guilt, but the innocence of the defendant *as charged in the indictment.*

As to the admission of the subsequent stamp requests, the majority on rehearing attempt to bolster their position by declaring it to be circumstantial evidence,[1] i. e., to use the additional stamp and envelope requests to show system, scheme, design, etc. In truth, there is no showing by the State as to the number of envelopes appellant had on hand prior to the stamp requests. The record fails to support a conclusion that appellant stole anything from

---

1. We note that the audit report of the State Auditor, as of August 31, 1972, on the Senate and House of Representatives of the State of Texas, at page thirty-five, contains the following:
 "Note H: Net of $5,250.00 postage turned in by Representative Bynum, which we are informed was left with him as effects of the Office by his predecessor, former State Representative Walter L. Knapp, Jr."
 I further realize that this report is not a part of the record in this cause and cannot be considered by this Court. But it is indicative of what has been said by the dissent in this cause.

the State or that he was found in possession of any stolen items. See Judge Odom's opinion in Garrett v. State, Tex. Cr.App., 500 S.W.2d 531 (1973).

The majority opinion has now effectively reversed a rule of law and we can now state that in Texas, at least, a public official is presumed guilty and must prove his innocence beyond a reasonable doubt. In France and many other European countries, that is the rule of law. In America, such a rule has never before existed. Shall we apply a different standard of proof to public officials than we do to average citizens? Are we to abandon our system of criminal jurisprudence when this democracy was founded in order that we might escape just such tyrannical notions?

I vigorously dissent.

ONION, P. J., joins in this dissent.